QUIGLEY et al. v. SPENCER STONE CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1906.)

No. 1,179.

1. CONTRACTS—CONSTRUCTION—MUTUALITY.

Complainants entered into a contract by which they agreed to furnish to the receivers of a railroad company 100,000 cubic yards of stone ballast to be crushed by them and delivered on board cars furnished by the receivers at the rate of 400 yards daily. The receivers agreed to furnish the railroad tracks necessary for the convenient and economical prosecution of the work and transportation for men, and to pay for the stone on monthly estimates made by their engineer, who was also made sole arbiter of any differences that might arise; the contract providing that complainants should have no right of action thereon, except such as might be found to exist under the terms of his final certificate. It also provided that, in case of complainants' failure to comply with its terms as to quality of material or rate of delivery, it might be canceled by the

receivers on 10 days' notice. *Held*, that such contract was mutual, and bound the receivers to take and pay for the full quantity of 100,000 yards if furnished in accordance with its terms.

[Ed. Note.—Mutuality in contracts, see note to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543.]

2. EQUITY—JURISDICTION—SUIT FOR BREACH OF CONTRACT.

Complainants, having a contract to furnish a certain quantity of stone ballast for a railroad, to be delivered in daily installments, transferred the same to one of the defendants, who assumed their obligations thereunder and purchased their machinery and the use of their quarries and tracks, agreeing to pay therefor in installments from the proceeds of the contract. Such defendant assigned his contract to his codefendant, which assumed his obligations to complainants thereunder, took possession, and carried on the work for a short time when it abandoned the same, and both defendants joined in a notice of a rescission of the contract with complainants. *Held* that, on an allegation of the insolvency of the first defendant, complainants were entitled to maintain a suit in equity against both defendants to recover their damages sustained by the breach of the contract, as their only adequate remedy.

3. SALE—SUIT TO RECOVER PRICE—WAIVER OF SECURITY.

A seller may maintain a suit in equity to recover the price of the thing sold from a second purchaser who has assumed the obligation to pay such price, notwithstanding his retention of title as security or his taking a bond from the first purchaser, where neither affords him an adequate remedy.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appellants' bill alleged that on September 13, 1899, they entered into a written contract with the receivers of the Kansas City, Pittsburgh & Gulf Railroad Company, wherein they agreed to crush and load upon cars for the receivers 100,000 cubic yards of stone ballast of a specified grade "at the rate of 400 cubic yards per day until the completion of this contract," for the price of 50 cents (reduced on October 21, 1899, to forty-eight cents) per cubic yard, and wherein the receivers agreed to furnish the railroad tracks "necessary for the convenient and economical prosecution of the work" (the grading and bridging to be done at appellants' expense), to furnish free transportation over their lines "for the men, teams, tools and material necessary to be used upon the work," and to pay the agreed price upon monthly estimates of the resident engineer of the receivers, less 10 per cent. reserved "until the completion of the contract," and wherein it was mutually agreed that upon appellants' failure to comply with the contract, "either as to quality of material furnished or rate of delivery," the receivers should have the right to cancel the contract upon giving appellants 10 days' notice and appellants thereupon should have no right of action for damages, that appellants should have no claim for damages for the receivers' failure to furnish sufficient cars if they had made reasonable efforts to furnish them, that the monthly estimates should be subject to correction in the "final certificate" of the resident engineer, and that the resident engineer should be the sole arbiter of controversies respecting quality, amount or time of deliveries, and that appellants should have no right of action except such as might be found to exist under the terms of the final certificate; that after the execution of the contract appellants supplied themselves with quarries, machinery, supplies, and workmen, and began and continued the work contemplated until June 18, 1900; that on June 12, 1900, appellants entered into a written contract with appellee Blue, wherein they licensed Blue to use their quarries, buildings, and sidings during the time required to execute the contract with the receivers, employed Blue to carry out that contract for the compensation of 48 cents per cubic yard, and sold him their machinery and supplies at certain prices, and wherein Blue agreed to complete the contract with the receivers, to pay appellants for the use of the quarries five cents per cubic yard for all stone

taken and furnished to the receivers or to third persons, and to pay appellants $2,000 on delivery of the machinery and supplies and the balance in installments on the 20th of each month "in amounts equal to six cents for each cubic yard of stone quarried and crushed during the preceding month," and wherein it was mutually agreed that their contract might be assigned, but without releasing either, that title to the machinery should not pass to Blue until the purchase price was fully paid, and that each party should give the other a $5,000 bond with sureties for the faithful performance of their reciprocal obligations; that on June 18, 1900, the machinery inventoried $5,208.16 and the supplies $3,324.85, Blue paid appellants $2,000 and took possession, and on the same day Blue assigned his contract with appellants to appellee Spencer Stone Company, which company thereupon entered into possession of the quarries, machinery, and supplies, and assumed the execution of appellants' contract with the receivers; that on June 18, 1900, appellants, relying on their contract with Blue, discharged their employés, and appellants would have carried out their contract with the receivers if they had not relied upon Blue's doing so; that the stone company continued the work until August 11, 1900, when Blue and the stone company served a written notice on appellants that they rescinded the contract on account of fraudulent misrepresentations by appellants, and the stone company quit the work and abandoned possession of the quarries, machinery, and supplies; that appellants have thereby lost their royalty of five cents per cubic yard on 94,720 yards of crushed stone; that appellants will lose $7,500 in excess of the amount to be paid by the receivers in completing the work; that Blue is insolvent, and appellants are entitled in equity to have the stone company pay them the balance of the purchase price of the machinery and supplies, and also their royalties on 94,720 cubic yards, and also the loss they will sustain in completing the contract with the receivers. The bill further alleged that the abandoned machinery and supplies were liable to damage from exposure, decay, and theft, and that a caretaker or receiver should be appointed. (On agreement of the parties the court appointed a caretaker, who subsequently, under orders of the court, sold the machinery and supplies, realizing $4,002.34 above expenses. Appellants were the purchasers, and the court on March 4, 1901, confirmed the sale and accepted appellants' bond to account for the purchase price).

Appellees demurred to parts of the bill and answered the remainder. The demurrer was addressed to the alleged causes of action for royalties on 94,720 cubic yards undelivered, and for $7,500 which would be lost in completing the contract with the receivers. The demurrer was sustained. The answer set up alleged fraudulent misrepresentations by appellants which would justify the rescission of the contract. The master found the part of the bill that was answered to be true and the allegations of the answer to be false. As a conclusion of law, based on the conditional sale of the machinery and on the contract provision that deferred payments for the machinery and supplies should be made "in amounts equal to six cents for each cubic yard of stone quarried and crushed during the preceding month," the master found, on the theory that the contract between appellants and the receivers was void for lack of mutuality, that appellees had already paid appellants all they were entitled to receive.

Francis B. James, for appellant.

Smiley N. Chambers, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

In sustaining the partial demurrer and in entering a decree upon the master's report, the court adopted appellees' contention that the contract between appellants and the receivers was void for lack of mutuality because the receivers were not bound to take and pay for the 100,000 cubic yards of stone ballast.

The intention of the parties, as it is fairly and faithfully gathered from the entire instrument, is the pole star of interpretation. The receivers exacted of appellants a covenant to crush and put on the receivers' cars 100,000 cubic yards of ballast "at the rate of 400 cubic yards per day until the completion of this contract." The receivers, in turn, covenanted to furnish the railroad tracks "necessary for the convenient and economical prosecution of the work," the grading and bridging to be done at appellants' expense. That is, the receivers were to bear all other expenses, such as rails, ties, etc., in constructing such sidings and quarry tracks as were necessary. Necessary for what? For getting out 5 or 500 cubic yards of ballast? No; "for the convenient and economical prosecution of the work." What work? The only work that had been mentioned, the work that was the subject-matter about which the parties were negotiating, the work of getting out "100,000 cubic yards of stone ballast at the rate of 400 cubic yards a day" until completed. The receivers further covenanted to furnish free transportation for all "men, teams, tools, and machinery necessary to be used upon the work"—the same work. They further agreed to pay the stipulated price upon monthly estimates, less 10 per cent. reserved, "until the completion of the contract." We think it clear from these express provisions that the receivers impliedly covenanted to take and pay for the 100,000 cubic yards, and that the contract was mutually obligatory upon the parties—upon appellants to furnish and upon the receivers to accept and pay for the whole quantity. This conclusion, in our judgment, is made inevitable by a consideration of the further provisions of the contract. If the receivers were taking a mere option, terminable at will, why should they have been solicitous to provide a 10 days' notice of cancellation for appellants' failure to deliver 400 cubic yards a day of the specified quality? Why require that the monthly estimates be subject to correction in the "final certificate"? Why protect themselves so carefully as to the quality and measure of the entire 100,000 cubic yards by constituting the resident engineer the arbiter of differences? The only intention to be gathered is that the receivers should be liable for damages if they failed to accept and pay for the 100,000 cubic yards, provided appellants faithfully performed the contract on their part. St. Louis & Denver Land Co. v. Tierney, 5 Colo. 582; Bangor Furnace Co. v. McGill, 108 Ill. 656; Morier v. Moran, 58 Ill. App. 235; Black v. Woodrow, 39 Md. 194; Baker Co. v. Merchants' Ice Co. (Sup.) 37 N. Y. Supp. 276.

The contract between appellants and the receivers was not deprived of mutuality by the provision that the receivers' engineer should be the arbiter of controversies respecting quality, amount, or time of deliveries, and that the appellants should have no right of action except such as might be found to exist under the final certificate. Such provisions are common in building and construction contracts. The architect or engineer is required to act in perfect good faith in making his certificate; and, if he does not, the builder or contractor may recover without the certificate. 3 Page on Contracts, art. 1467.

The stone company assumed Blue's obligations to appellants. But

there was no privity of contract between appellants and the stone company. So, appellants could sue the stone company only in equity, where Blue could be brought in to answer as to his insolvency and the fact of his assignment to the stone company. National Bank v. Grand Lodge, 98 U. S. 123, 25 L. Ed. 75; Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667; Willard v. Wood, 135 U. S. 309, 10 Sup. Ct 831, 34 L. Ed. 210; McKee v. Lamon, 159 U. S. 317, 16 Sup. Ct. 11, 40 L. Ed. 165. .

There was no adequate remedy at law. True the appellants might have retaken the machinery under their reservation of title as a security for the debt. But the value of second-hand machinery, less wear and tear, would not be likely to equal the purchase price plus interest. As the agreement to pay the purchase price was unconditional, appellants had the right to waive the return of the machinery, treat the contract as an executed sale, and recover the agreed price. 1 Mechem on Sales, art. 615. It is also true that appellants might also have prosecuted an action at law on Blue's $5,000 bond. But the unpaid balance of the purchase price of the machinery and supplies was $6,533.01, without interest; and this leaves out of view the items of damage to which the demurrer was sustained. Plainly the only remedy that was adequate to the situation was to bring all the matters into one suit in equity.

This equitable right was not destroyed by Blue's joining the stone company in the attempted rescission. Their action was wrongful, was an attempted fraud upon appellants, and from it no equitable rights should accrue to them or either. Further, as between appellees, there was no attempt by the stone company to rescind its assumption of Blue's obligations. Their notice was on the basis that Blue had incurred no obligations. And, finally, if the notice were to be construed as a rescission by the stone company of its obligations to Blue, there was no consideration for the release, and in an action at law by Blue against the stone company on its assumption the nudum pactum would be no defense.

The balance of the purchase price of the machinery and supplies was to be paid in monthly installments. But when appellees, on August 11, 1900, repudiated the contract, they committed a breach on account of which appellants were entitled to sue at once. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. On that part of the complaint which was answered appellants are entitled to $6,533.01, with 6 per cent. interest from August 11, 1900, less credits, as partial payments, of the amount received by appellants on account of the stone company's partial performance of the contract with the receivers and the $4,002.34 left in appellants' hands on March 4, 1901, as the proceeds of the caretaker's sale. .

The demurrer to parts of the bill should be overruled and appellants permitted to show the amount of legal damages, if any, which they have sustained by the stone company's failure to complete the contract with the receivers.

No part of the costs in the way of the caretaker's charges and expenses should have been taxed to appellants. The general costs

should be taxed to appellees, apart from those that may accrue on the hearing respecting further damages, and in that respect the costs should abide the event.

The decree is reversed, with the direction to proceed in accordance with this opinion.