AVONDALE MILLS *vs.* BENCHLEY BROTHERS, INC.

Suffolk.    October 19, 1922. — March 1, 1923.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Contract,* In writing, Construction.   *Agency,* Existence of relation.   *Evidence,* Extrinsic affecting writings, Interrogatories.

A corporation doing business as a commission merchant telegraphed to a manufacturer of yarn in Alabama: "Have succeeded in getting customer up to 83 c. for 5000 additional.  Will you accept?"  The manufacturer replied by telegram the same day: "Enter order at eighty-three cents."  On the following day, the merchant wrote to the manufacturer: "Please enter and acknowledge receipt of the following order as per exchange of telegrams — 5000 lbs. 22/1 K.P. Sycamore cones Price 83c.  Terms 2% cone allowance, 2% cash 10 days, freight prepaid, 5% commission.  Shipment During June.  Ship to S. . . ."  By reason of embargoes, the manufacturer was unable to ship in June, but on June 24 sent to the merchant an invoice marked, "Holding account embargo." On July 2 the merchant telegraphed to the manufacturer to hold the shipment to S and on July 6 wrote that he could not "invoice this to our customer until we have B/L showing that shipment has been made."  S refused to take the yarn because shipment was not made in June, and the manufacturer brought an action against the merchant for the purchase price, at the trial of which, besides the foregoing facts, there were in evidence testimony of the defendant's manager explaining the terms of the contract shown by the telegram and the letter and stating that, while the goods were billed to the defendant according to the terms stated in the letter, the defendant billed them to S without the discount for "commission," and allowed S a cash discount for about twenty days from the shipment.  He also testified that the defendant never bought but acted as intermediary between manufacturer and purchaser and, when they met on terms, gave the purchaser a sales note, simultaneously "forwarding the corresponding order to the" manufacturer, and that this was the course pursued in the sale at issue.  In answer to an interrogatory in writing propounded by the plaintiff to the defendant's treasurer, as to whether, on the occasion in question, the defendant entered "into a contract" of purchase with the plaintiff, the treasurer stated "Yes" and further answered that such contract was in writing and was embodied in the two telegrams and the letter above quoted.  The judge ruled that the contract between the parties was one of agency and not of sale and ordered a verdict for the defendant. *Held,* that

(1) The oral testimony and certain subsequent correspondence did not show any modification of the original agreement evidenced by the telegrams and the confirmatory letter;

(2) There was no evidence tending to show the adoption by the parties of any particular construction of the contract by their conduct or correspondence;

(3) There was nothing in the letters of the defendant or in the testimony of

the defendant which rightly could be interpreted as an admission that it was bound to the plaintiff as buyer;

(4) The answer of the defendant's treasurer to the interrogatory of the plaintiff, that the defendant entered into a contract with the plaintiff to purchase the yarn, was followed immediately by reference to the writings by which that contract was brought into existence and hence could not alter its legal effect;

(5) The two telegrams were in form and in substance communications between agent and principal and not between two principals, and the confirmatory letter conformed with this construction;

(6) The bought and sold notes sent by the defendant, although not directly material upon the issues here raised, were indicative of the intermediary relation of the defendant to the transaction;

(7) Other facts, such as the slight extension of credit by the defendant to the customer, occurred subsequent to the making of the contract and were not sufficient to convert into a question of fact the question of law as to the nature of the contract between the parties, which depended upon the construction of the telegrams and of the confirmatory letter;

(8) The ruling of the trial judge was correct.

CONTRACT, with a declaration in two counts, the first count being for $1,965.16 for yarn, alleged to have been sold and delivered to the defendant, and interest; and the second count being for an alleged breach of a contract to accept and pay for certain yarn. Writ dated May 19, 1921.

In the Superior Court, the action was tried before *Hammond, J.* It appeared that the yarn ordered of the plaintiff was to be delivered to one Smalley, who refused to accept it because of a delay in shipment due to an embargo. Following correspondence described in the opinion and a letter of July 6, 1920, from the defendant to the plaintiff, there was further correspondence between the parties, the plaintiff consistently contending that the defendant as purchaser should pay for the yarn. The closing paragraph of a letter from the defendant to the plaintiff dated October 13, 1920, was as follows: "If Mr. Smalley adheres to his present attitude and stands upon his rights, we are inclined to believe that same would cancel his contract with us and ours with you. We are not yet through with him, however, and may be able to force him or scare him into taking in the balance due. The matter at issue involves only about 2300 lbs. of yarn, but we feel it is right as representing you, to use every possible effort we can to get him to take in the yarn. As soon as we can come to a final determination, we will advise you." The closing paragraph of a

letter of the defendant to the plaintiff of October 1, 1920, was as follows: "We do not wish to dodge our responsibilities, but it is clearly evident if Smalley has the right to cancel the contract, then the same right lies with us so far as our contract with you is concerned. We are still negotiating with the hope that eventually we can reach an agreement with Mr. Smalley, and when the matter comes to a conclusion, will advise you."

Other material evidence is described in the opinion. At the close of the evidence, the trial judge "ruled as a matter of law that the transaction in question did not constitute a contract of sale to the defendant and that there was no evidence from which the jury could find that a contract of sale had been made with the defendant, but that the defendant was the agent of the plaintiff in this transaction." A verdict for the defendant on that ground accordingly was ordered, and the action was reported to this court for determination with the stipulation that, if the above ruling was wrong, judgment was to be entered for the plaintiff in the sum of $763.95 with interest thereon from the date of the writ; and, if the ruling was right, judgment was to be entered on the verdict.

*R. C. Evarts*, for the plaintiff.

*J. H. Powers*, for the defendant.

RUGG, C.J. This is an action of contract. The declaration is in two counts, the first for goods sold and delivered, and the second for breach of contract to accept and pay for yarn. The plaintiff is a manufacturer of yarn in Alabama. The defendant is a commission merchant at Boston in this Commonwealth.

The contract here in suit was made by telegrams and letters as follows: on April 9, 1920, the defendant telegraphed to the plaintiff, "have succeeded in getting customer up to 83c. for 5000 additional. Will you accept?" On the same date the plaintiff answered by telegram, "Enter order at eighty-three cents." On the day following the defendant wrote to the plaintiff, "Please enter and acknowledge receipt of the following order as per exchange of telegrams — 5000 lbs. 22/1 K.P. Sycamore cones Price 83c. Terms 2% cone allowance, 2% cash 10 days, freight prepaid, 5% commission. Shipment During June. Ship to Harry R. Smalley, 111 East Rittenhouse Street Germantown, Philadelphia, Pa. Ship — care of Philadelphia & Reading R. R. at Philadelphia."

The manager of the defendant's yarn and textile department, the only witness called, testified that the word "additional" was used in his telegram of April 9 to the plaintiff because yarn previously ordered was being delivered direct to this same customer, who wanted to buy more. He also testified concerning the meaning of the "Terms" in his letter of April 10, 1920, to the plaintiff, that "2% cone allowance" was discount of that amount on the price to cover the weight of paper tubes or truncated cones on which the yarn as sold and delivered was wound, and which were included in the weight of the yarn as sold; "2% cash 10 days" was a discount from the price allowed for a cash payment within ten days; "freight prepaid" meant that the freight was to be prepaid by the mills when the yarn was put on the cars; and that "5% commission" meant that the defendant was to receive for its commission five per cent on the price stated after deduction of the cone allowance and of the cash discount; that the mill billed the yarn to the defendant with these discounts, the commission amounting approximately to four cents per pound, and that the defendant billed the yarn to Smalley, the purchaser, with the same discounts omitting the five per cent commission, except that the cash discount allowed the defendant was ten days from date of shipment, while the cash discount allowed Smalley on the defendant's bill to him was to the tenth day of the month following the shipment, averaging about twenty days from the shipment, being a slight loss of interest to the defendant.

A part of the yarn ordered was shipped during June and about it no controversy exists. A part was not shipped during June, and respecting that part on June 24, 1920, the plaintiff sent to the defendant an invoice which stated "Holding account embargo," to which the defendant replied on July 6, "It is impossible for us to invoice this to our customer until we have B/L showing that shipment has been made." On July 2, the defendant telegraphed to the plaintiff to hold the shipment to Smalley, referring to letter following. In that letter, dated July 6, reasons were set forth why Smalley did not desire the yarn at that time. Its concluding sentence was, "You, of course, understand that this is in no sense a cancellation and we will see that customer takes in the yarn." Further correspondence followed, from which it appears that Smalley refused to receive the yarn when the freight embargo was

removed because it was not shipped in June as required by his contract, and he cancelled the order.

The defendant's manager further testified in substance that its method of doing business in yarn was never to buy but to secure prices from the mills represented by it and then to offer those yarns at the stated prices to their customers and to endeavor to get them to place orders; ".when they meet the mills' quotations — we don't sell but give them a sales note forwarding the corresponding order to the mills," this being done simultaneously, and that that course was followed in the present instance. The seller thus knew the buyer and the buyer knew the seller.

Answers to interrogatories by the plaintiff to the treasurer of the defendant were put in evidence, wherein he answered "yes" to the question, "On or about April 10, 1920, did Benchley Brothers, Inc., enter into a contract with Avondale Mills to purchase 5000 pounds 22/1 K.B. Sycamore cones?" He further answered that such contract was in writing and embodied in the two telegrams of April 9 and the letter of April 10 already quoted.

The answers to the interrogatories, the telegrams and letters and oral testimony by the defendant's manager of its yarn and textile department constituted all the evidence at the trial.

In the Superior Court, the judge ruled as matter of law that the transaction did not constitute a contract of sale to the defendant and that there was no evidence from which the jury could find that a contract of sale had been made with the defendant, but that the defendant was the agent of the plaintiff. The correctness of this ruling is reported for decision.

The point to be decided is whether written instruments which constitute the contract between the parties, namely, the two telegrams of April 9 and the letter of April 10, bound the defendant as buyer. The oral testimony and the subsequent correspondence did not show any modification of that original agreement. Such evidence apparently was all admitted without objection, not to vary the written contract, but to explain the meaning of trade terms used and to show the business relations and methods of the parties, in the light of which their written words are to be interpreted. *Butterick Publishing Co.* v. *Fisher*, 203 Mass. 122, 133. *Goldenberg* v. *Taglino*, 218 Mass. 357, 359. *Spevack* v. *Budish*, 238 Mass. 215, 217. *Eustace* v. *Dickey*, 240 Mass. 55, 72.

The record fails to show the adoption by the parties of any particular construction of the contract by their conduct or correspondence. *Nash* v. *Webber,* 204 Mass. 419, 424. *New York Central Railroad* v. *Stoneman,* 233 Mass. 258, 263. *Crowe* v. *Bixby,* 237 Mass. 249, 253. There is nothing in the letters of the defendant or in the testimony of the defendant's manager which rightly can be interpreted as an admission that it was bound to the plaintiff as buyer. That is all consistent with its present contention that it was acting as agent.

The answer of the treasurer of the defendant to the plaintiff's interrogatory, that the defendant entered into a contract with the plaintiff to purchase the yarn, was followed immediately by reference to the writings by which that contract was brought into existence and hence cannot alter its legal effect.

The two telegrams are in form and in substance communications between agent and principal and not between two principals. The negotiation was opened by the telegram from the defendant transmitting an offer from a customer for yarn in addition to a quantity previously ordered. The words "customer" and "additional," while not of decisive significance, carry an implication of agency on the part of the sender. The reply of the plaintiff to the defendant was simply "Enter order" at the price named. These words are not acceptance of an offer. They are not words of contract. They are not in any way adapted to express that idea. They import, on the contrary, direction by the sender to one acting in his behalf to do something in his interest. They confer authority. They are words of command. They look forward to a future act with a third person as necessary before rights and liabilities shall be fixed. The order of the customer is to be entered. By necessary intendment the order may have been withdrawn in the meantime and hence could not be entered. Therefore it is the order of somebody other than the defendant. It is plainly the order of the customer to whom reference was made in the first telegram. The confirmatory letter from the defendant on April 10 conforms to these implications of the telegrams and emphasizes them. The terms there stated are repeated. Certain details are added, of which the commission of five per cent to be allowed to the defendant is most notable. This is an apt phrase to use in connection with agency or brokerage. It is inconsistent with the

notion of a direct sale. "Commission is not used in a proper sense as to goods sold directly to a consignee. Discount is the natural word to use in such connection, while commission correctly describes that which an agent received on sales." *Cox* v. *Savage,* 209 Mass. 501, 508. The shipping directions in the letter indicate the name and address of the "customer" mentioned in the telegram.

The bought and sold notes sent by the defendant, although not directly material upon the issues here raised, were indication of the intermediary relation of the defendant to the transaction. They are not documents interchanged between principals but are prepared and sent by a broker or agent. The bought and sold notes are statements of the contract of sale, the former delivered to the buyer and the latter to the seller, by the person through whom a sale is consummated. *Coddington* v. *Goddard,* 16 Gray, 436, 442. *Thompson* v. *Gardiner,* 1 C. P. D. 777. *Eau Claire Canning Co.* v. *Western Brokerage Co.* 213 Ill. 561, 582. *Bibb* v. *Allen,* 149 U. S. 481, 496. See Benjamin on Sales (7th Am. ed.) 244–258, and cases there collected.

Other facts, such as the slight extension of credit by the defendant to the customer, occurred subsequent to the making of the contract and are not sufficient to convert into a question of fact the relations of the parties established by the writings.

While the case is not free from difficulty, we are of opinion that the ruling was right.

*Judgment on the verdict.*