EVANS, COLEMAN AND EVANS, LTD. *vs.* JOSEPH .PISTORINO & others.

Suffolk.     December 4, 1922. — May 23, 1923.

Present: RUGG, C.J., CROSBY, PIERCE, & CARROLL, JJ.

*Equity Jurisdiction*, Subrogation, To reach and apply assets not attachable at law. *Judgment. Evidence*, Competency.

In a suit in equity by a packer and seller of canned salmon against a broker in canned goods and a customer for whom, it was alleged, he purchased carloads of salmon from the plaintiff, to require the purchaser to pay a judgment which the plaintiff had secured against the broker for the goods so purchased, it appeared that the broker had made the purchase at the request of one whom he knew to be acting as an agent of a purchaser and that he accepted the purchaser as his principal as soon as his identity was known and thereafter had mailed to the purchaser a " sales ticket " headed by the broker's name and address and signed by him, which described the salmon and the terms of sale and stated that they were " sold to " the purchaser " For account of " the plaintiff; that one carload was received and paid for; and that the broker had not assets which could be taken on

execution sufficient to satisfy the judgment debt of the plaintiff against him.  *Held*, that

(1) The judgment of the plaintiff against the broker in the action at law did not prevent inquiry in this suit as to the ultimate purchaser and his relation with the broker;

(2) In the circumstances, the purchaser was indebted to the broker for the balance of the purchase price;

(3) The statute of frauds was no defence to the purchaser, the "sales ticket," signed by the broker only, having been signed by him with implied authority of the purchaser;

(4) In the circumstances, it was not necessary that the broker be forced into bankruptcy or make payment of the plaintiff's claim by borrowing money to that end before liability on the part of the party ultimately responsible could be established and enforced;

(5) The suit was a proper subject of equity jurisdiction, and relief should be given to the plaintiff;

(6) The plaintiff was not precluded from relief by recovering judgment in the action at law against the broker;

(7) At the hearing of the suit, a certificate of the judgment in the action at law by the plaintiff against the broker and special findings of the jury therein were competent as binding the parties to it, who also were parties to this suit, and also the purchaser, since it appeared that the purchaser's agent was present at the trial of that action and assisted the attorney for the broker;

(8) Evidence as to what disposition was made of the carload which was received and paid for was immaterial.

In the circumstances above described, the broker was entitled to maintain a cross bill against the purchaser to compel him to pay the judgment debt and also such expenses as the broker sustained in defence of the action at law.

BILL IN EQUITY, begun by writ in trustee process in the Superior Court dated June 24, 1920, by a judgment creditor of the defendant Dorman-Huxford Company to compel two other defendants, for whom the judgment debtor as broker incurred the debt which was the basis of the judgment, to pay the debt in the place of the judgment debtor. Also a

CROSS BILL IN EQUITY, filed by leave on October 10, 1921, by the judgment debtor against the two sought to be charged with the judgment debt in the main suit, seeking in substance the same relief as that sought in the principal bill and also reimbursement for counsel fees and expenses incurred in defence of the action which resulted in the judgment debt.

The main suit was referred to a master, whose report was

filed on July 11, 1921. Material findings by the master are described in the opinion. He refused to receive evidence as to the counsel fees and expenses incurred in defence of the action which resulted in the judgment debt. Thereafter, the cross bill was filed.

The defendants other than Dorman-Huxford Company filed objections and exceptions to the report raising the questions as to admission and exclusion of evidence described in the opinion. The exceptions and the cross bill were heard by *Sisk*, J., who found that reasonable compensation for the services of counsel for Dorman-Huxford Company in defence of the action which was the basis of the judgment debt was $1,500, and reserved the suit and cross suit for determination by this court.

The case was submitted on briefs.

*R. W. Hale & D. H. Dorr*, for the plaintiff.

*F. J. Murray & W. A. Murray*, for the defendants.

RUGG, C.J. This is a suit in equity by a judgment creditor of Dorman-Huxford Company against that corporation and several other persons alleged to be indebted to it on account of transactions connected with those out of which sprang the main indebtedness to the plaintiff. The case was referred to a master under a rule requiring him to report his findings. No evidence is reported and those findings must be accepted as true. So far as now pertinent they are as follows:

Dorman-Huxford Company is a Massachusetts corporation in business in Boston as a broker in canned goods and dried fruits, selling from manufacturers to jobbers on commission. The plaintiff, a corporation located at Vancouver, British Columbia, is a packer and seller of canned salmon among other products. At the instance of the defendant Yunes, Dorman-Huxford Company bought of the plaintiff two lots of canned salmon of five thousand cases each. Yunes, who gave both orders to Dorman-Huxford Company, said to it that the first lot was intended for the defendants Pistorino and Yunes. Two days later, on February 10, 1919, Dorman-Huxford Company mailed to Pistorino and Yunes a " sales ticket " headed with its name and address,

signed by it and otherwise of the tenor following: "Sold to Pistorino & Yunes, Boston, Mass. For account of Evans, Coleman & Evans, Vancouver, B. C., 5000 c/s #1 Tall Chum Salmon $1.62-½ f. o. b. Vancouver less 1-½% Terms 10 dy draft against documents." After the second lot was bought of the plaintiff, Yunes told Dorman-Huxford Company that these goods were bought for the International Import and Export Company. Thereupon on February 11, 1919, Dorman-Huxford Company mailed to that company a "sales ticket" similar to the other except the necessary change as to buyer. One carload only of the first lot has been received and paid for. The plaintiff brought an action against Dorman-Huxford Company as purchaser and has recovered judgment against it for the rest of the amount due on the sales of both lots. The present suit is against Dorman-Huxford Company, Pistorino and Yunes, the International Import and Export Company, and others, to collect that judgment.

It is alleged in the bill and admitted by the answer of Dorman-Huxford Company that the latter has not assets which can be taken on execution sufficient to satisfy the plaintiff's claim. The purpose of the bill is to collect the amount due on the judgment from the persons for whom the goods were bought by Dorman-Huxford Company and who are alleged to be debtors to that company.

The goods which are the subject of this suit were of merchantable quality. Dorman-Huxford Company acted in both transactions as a merchandise broker bringing the parties together, and Yunes knew the basis of the transactions to be that the plaintiff was selling to concerns which he represented. At all times material to this suit Yunes was authorized to represent and contract for purchases on account of Pistorino and Yunes and the International Import and Export Company. This finding of the master is interpreted to mean that Dorman-Huxford Company knew that Yunes was at all times acting as agent, treated him as agent, and accepted his principals as soon as disclosed.

There is no express finding by the master as to the point

who were the principals as purchasers in these two sales. The judgment in the action at law has established the fact that Dorman-Huxford Company rendered itself as buyer liable to the plaintiff. That does not prevent inquiry in the present suit as to the ultimate buyers and as to the relations between Dorman-Huxford Company as broker and its customers or those for whom it acted as agent. The necessary result of the findings of the master is that Pistorino and Yunes were the purchasers of the first lot and the International Import and Export Company were the purchasers of the second lot. That was the explicit representation at the time by Yunes, the agent of both. Dorman-Huxford Company made out the " sales tickets " in those names at the time. It does not seem ever to have changéd its position in this respect. The " sales tickets " were at least strong evidence as to the identity of the buyers. These " sales tickets " were the equivalent of bought and sold notes, which are statements of the contract of sale including in the form here used the name of the buyer and of the seller. There was evidence at least as to the first lot that a sales note was sent to the plaintiff. There are no allegations of fraud on the part of Yunes in these transactions. There is no finding of fraud on his part by the master. Fraud cannot be presumed. He acted as agent for others in his dealings with Dorman-Huxford Company and that corporation accepted him as agent. Whether at first it might have accepted him as principal or as agent for undisclosed principals need not be decided. It accepted immediately his statement as to who his principals were and sent them sales tickets, treating them thus as principals. It cannot now deal with Yunes alone as principal. It follows that in the peculiar circumstances here disclosed indebtedness is established on this record to Dorman-Huxford Company from Pistorino and Yunes for the balance due on the first lot and to it from the International Import and Export Company for the contract price of the second lot.

The statute of frauds is no defence to Pistorino and Yunes or the International Import and Export Company. Although neither of them signed any paper, the " sales

tickets " were enough to bind them. *Avondale Mills* v. *Benchley Brothers, Inc.* 244 Mass. 153, and authorities there collected. In this aspect of the case Dorman-Huxford Company was broker for them. The broker has a right of exoneration for liabilities incurred pursuant to express instructions from its customers. The customers conferred upon their broker implied authority to execute necessary or customary writings in their behalf and the customers through their agent Yunes ratified that conduct. The broker's authority need not be in writing. *Hawkins* v. *Chace,* 19 Pick. 502, 505. *Record* v. *Littlefield,* 218 Mass. 483, 485.

It was said in *Greene* v. *Goddard,* 9 Met. 212, at page 222, " Where an agent, in pursuing the instructions of his principal, and acting within the scope of his authority, becomes personally liable for the performance of the contract he makes for his principal, and without which personal liability the orders of the principal cannot be executed at all, or not so well executed, and this is known by the principal at the time of giving his instructions and creating the agency, if a loss occur to the agent, it is most clear that he can look to the principal for indemnity for the damage sustained by him." *Bibb* v. *Allen,* 149 U. S. 481, 498.

It is not always an essential prerequisite in equity to liability on the part of the customer to his broker for indemnification for loss incurred that the latter has actually paid the obligation. In the circumstances here disclosed and in this proceeding in equity, it is not necessary that Dorman-Huxford Company be forced into bankruptcy or make payment of the plaintiff's claim by borrowing money to that end before liability on the part of those ultimately responsible can be established and enforced. As between Dorman-Huxford Company, the brokers or agents, and their customers or principals, the ultimate responsibility is wholly on the latter.

The governing principle of equity in such circumstances was succinctly stated by Mr. Justice Gray in *Keller* v. *Ashford,* 133 U. S. 610, at page 623, as follows: " if one person agrees with another to be primarily liable for a debt

due from that other to a third person, so that as between the parties to the agreement the first is the principal and the second the surety, the creditor of such surety is entitled, in equity, to be substituted in his place for the purpose of compelling such principal to pay the debt." In this connection the words of Sir George Jessel in *Lacey* v. *Hill*, L. R. 18 Eq. 182, at pages 191, 192, are apt: " it is said this is a liability as distinguished from an actual payment, and that the agent or person entitled to be indemnified has no remedy. Whatever may be the case at law . . . it is quite plain that in this Court any one having a right to be indemnified has a right to have a sufficient sum set apart for that indemnity. It is not very material to consider whether he is entitled to have that sum paid to him, or whether it must be paid direct over to the creditor. If the creditor is not a party, I believe that it has been decided that the party seeking indemnity may be entitled to have the money paid over to him. As to the observation that he may compromise for less, the answer is, that the person liable to indemnify can go to the creditor and set him right. It is his own fault that the liability remains. But he is certainly in equity liable to indemnify, and liable to indemnify to the extent of the liability incurred by the agent on his behalf." *Governors of St. Thomas's Hospital* v. *Richardson*, [1910] 1 K. B. 271, 276. *Mohawk & Hudson Rail Road* v. *Costigan*, 2 Sandf. Ch. 306. *Quigley* v. *Spencer Stone Co.* 74 C. C. A. 280. See opinion by the present Chief Justice of the United States in *Mercantile Trust Co.* v. *Baltimore & Ohio Railroad*, 94 Fed. Rep. 722: and also *Wolmershansen* v. *Gullick*, [1893] 2 Ch. 514.

It is provided by G. L. c. 214, § 3 (3) that there is jurisdiction in equity over " Other cases in which three or more parties have distinct rights or interests which cannot be justly and definitely decided in one action at law," and in § 3, (7) over suits by creditors to reach and apply any legal or equitable right or interest of a debtor " which cannot be reached to be attached or taken on execution in an action at law."

The principle declared in *Connolly* v. *Bolster*, 187 Mass.

266, and *O'Connell* v. *New York, New Haven & Hartford Railroad,* 187 Mass. 272, that suit in equity in those cases would not enforce the liability of an indemnitor rested on the special terms of contracts there in issue and is inapplicable to the facts here disclosed.

It follows from these equitable principles and statutes that the plaintiff can maintain this suit. This result was adumbrated in *Forbes* v. *Thorpe,* 209 Mass. 570, 582. There is nothing inconsistent with this conclusion in *Coffin* v. *Adams,* 131 Mass. 133, *Robb* v. *Mudge,* 14 Gray, 534, *Marston* v. *Bigelow,* 150 Mass. 45, and cases of like nature.

The plaintiff is not precluded from recovery in this proceeding by recovering judgment against Dorman-Huxford Company. Doubtless that judgment was an election to hold that corporation rather than other defendants as its main debtor. *Weil* v. *Raymond,* 142 Mass. 206, 213. *Marsch* v. *Southern New England Railroad,* 230 Mass. 483, 499. Having obtained judgment against one whom it has elected to hold as its main debtor, it is now attempting to collect that judgment by equitable process against those liable to that debtor.

The exceptions to the master's report cannot be sustained. The introduction of the certificate of judgment in the usual form of the court in the action of the plaintiff against Dorman-Huxford Company, together with copy of special findings of the jury, was right. It does not appear but that this showed the issues raised. *Rathbone* v. *Rathbone,* 10 Pick. 1. It was competent as binding between the parties to it, both of whom are parties to this action. It was competent on the further ground that the master's report shows in substance tender of defence of that action to Yunes. He was present in court during the trial, with his attorney, and assisted by furnishing evidence for its defence. This bound the defendants whom Yunes represented and rendered that judgment conclusive against them. *Boston* v. *Worthington,* 10 Gray, 496, 499. *Boston & Maine Railroad* v. *T. Stuart & Son Co.* 236 Mass. 98, 102.

The question as to the disposition made of the carload of salmon received and paid for does not seem to have been

relevant to any issue. Moreover, it does not appear what would have been the answer to the question, to the exclusion of which exception was taken.

A cross bill has been brought by Dorman-Huxford Company seeking to have established its right of exoneration by the other defendants, and that they be required to pay to the plaintiff the amount of its judgment and interest, and for its counsel fees incurred in the defence of the original action by the plaintiff against it. · This was proper practice in order that all matters in controversy between all the parties growing out of the subject matter of the suit may be adjusted in one suit. *Forbes* v. *Thorpe,* 209 Mass. 570, 583. *Parsons* v. *Parsons,* 230 Mass. 544, 553.

The reasons already stated and the authorities hitherto collected are enough to show that the plaintiff in the cross bill is entitled to general relief.

The plaintiff in the cross bill is also entitled to recover the amount disbursed by it for counsel fees in the action at law brought against it by the plaintiff. That defence was undertaken for the benefit of its principals to whom the sales tickets were sent. An agent may recover his disbursements made in the transaction of his principal's business. *Whitehead* v. *Darling,* 9 Ky. Law Rep. 340. *Lyon* v. *Sweeney,* 91 Mich. 478. *Curtis* v. *Barclay,* 5 B. & C. 141. *Clark* v. *Jones,* 84 Tenn. 351. The plaintiff in the cross bill was defending an action brought against it on its own obligation. Although in its name, that obligation was wholly for the benefit of the ultimate purchasers of the goods. The case at bar plainly comes within the principle of *Westfield* v. *Mayo,* 122 Mass. 100, at page 109.

Decree is to be entered overruling exceptions to and confirming the master's report, and overruling demurrer to the cross bill. Decree is to be entered on the plaintiff's bill ordering the defendants Pistorino and Yunes and the defendant the International Import and Export Company each to pay the proportion of the plaintiff's judgment for which each is liable as the buyers respectively of the first and second lots of goods, with costs. On the cross bill like decree is to be entered as to payment of the judgment, and

ordering both Pistorino and Yunes and the International Import and Export Company to pay to the plaintiff in the cross bill its expenses incurred for attorneys' fees as found by the trial judge, and costs.   The details in each case are to be fixed by the Superior Court.

*So ordered.*