MAYNARD *et al. v.* MAYNARD *et al.*

1. A surviving partner has no right to continue the partnership business as a going concern where neither the articles of partnership nor the will of the deceased partner so provides. Nevertheless, where a surviving partner does continue the business, which is a banking business, with the consent of the devisees and legatees of the deceased partner, the latter are estopped from raising the issue that deposits subsequently received and paid out on firm liabilities existing at the death of one of the partners should not be treated as a partnership liability.

2. While courts do not undertake to equalize partners with reference to the

personal services of each rendered by them respectively in conducting the firm's business, yet they will enforce an agreement for such allowance made by the partners. This agreement need not be express, if it can fairly and reasonably be implied from the actions of the partners and from their course of dealing with each other in connection with the business, or from circumstances under which extra services are rendered by a partner, for which compensation is claimed.

(a) The evidence authorized an inference of an implied agreement for extra compensation of one of the partners in this case.

(b) The partner claiming extra compensation had overdrawn his account, and the amount allowed by the auditor was within the overdraft. *Held*, under the facts of the case, that in an accounting to the heirs and legatees of the deceased partner, the surviving partner was not deprived of his right to extra compensation because of the statute of limitations.

3. The finding of the auditor with reference to the Hathorn Place, as set out in the third division of the opinion, is not open to the criticism made in the exception to such finding. .

4. The auditor was authorized to find that the purchase of the Davis Mill Place was in good faith; and it was not erroneous to refuse to make the purchaser a party to the action after the auditor had made his report and exceptions of law and fact thereto had been filed.

5. There was no error in overruling the exceptions of fact. Many of the exceptions, classified as exceptions of law, are really exceptions of fact. So far as the legal questions presented thereby are properly made, they are included in the foregoing rulings.

August 16, 1917.  Rehearing denied August 31, 1917.

Exceptions to auditor's report. Before Judge Searcy. Monroe superior court. January 25, 1916.

W. T. Maynard died testate in September, 1905. At the time of his death he was the senior member of two partnership enterprises—a private banking business with his son, P. B. Maynard, as partner, and a warehouse business with another son, Z. M. Maynard, as partner. He left a will in which he gave to his widow and each of his children specific devises either in land or money or both, placing his own valuation thereon, and directed that all of the devises and legacies should be equalized in the general distribution of his estate, so that his children should each receive a share of his estate equal in value to that of each of the others. He nominated his four sons, P. B. Maynard, Z. M. Maynard, R. L. Maynard, and I, S. Maynard, as executors. The will was duly probated, and the nominated executors qualified as such. The partnership property was not specifically devised. The warehouse business was authorized by the will to be continued, but was closed

out about a year after the testator's death. The banking business was continued until January, 1913, by the surviving partner, when certain of the devisees brought a petition against the executors for a settlement of the estate. The petition was amended from time to time, and answers were filed by the defendants. A cross-bill was also filed by one of the defendants, alleging indebtedness to the banking partnership and to the estate by several of the legatees, and praying that a full accounting be had with each of the legatees with respect to such indebtedness. The cause was referred to an auditor, who made a report to which exceptions of law and of fact were filed. Before the exceptions were heard, a motion was made to make E. T. Mallory a party defendant. The court refused this motion, overruled the exceptions of law and fact, and made the auditor's report the judgment of the court.

*Ryals & Anderson,* for plaintiffs.

*R. L. Berner, R. L. Maynard, Persons & Persons, Bloodworth & Bloodworth,* and *Foster & Foster,* for defendants.

EVANS, P. J. (After stating the foregoing facts.)

1. The auditor reported that he found as a matter of fact that W. T. Maynard and his son, P. B. Maynard, as copartners had conducted, for several years prior to the testator's death, a private banking business under the firm name of W. T. Maynard & Co. The capital employed in the business was $10,000, contributed by the partners in the proportion of 7 to 3. The business was being operated at the time of the testator's death, and at that time the liabilities exceeded the partnership assets. Shortly after the testator's death the executors had a conference with the legatees and devisees of W. T. Maynard as to the disposition to be made of the banking business. It was agreed that the business should be continued as a going concern, and it was so operated until the filing of the present litigation. During this time the surviving copartner received deposits from the customers of the banking firm, and issued certificates of deposit, and the money was applied to the discharge of liabilities existing at the time of the death of the senior partner. The auditor ruled that these deposits were a liability of both the estate of W. T. Maynard and the surviving partner, in the proportion of their respective interests in the partnership. Exceptions of law and fact were taken to these findings. We think the evidence sufficient to justify the auditor in his

findings of fact. We recognize the rule that though a surviving partner is entitled to wind up the business of the partnership, he is not entitled, in the absence of any provision in the will of the deceased partner or in the articles of the partnership agreement, to continue the business after the death of a copartner. While the surviving copartner had no right to continue the business as a going concern, still the devisees, having consented to the continuance of the partnership business as a going concern, are estopped from raising the issue that the money subsequently received on deposit should not be treated as a liability of the partnership.

2. The point most elaborately argued by counsel for the plaintiffs in error relates to the allowance by the auditor of compensation to P. B. Maynard for services rendered to the partnership prior to its dissolution occasioned by the death of W. T. Maynard. In his report the auditor stated that he recognized the general rule to be that a partner is not entitled to extra compensation for any inequality of service rendered as compared with that of his copartner, in the absence of a special agreement, unless the circumstances be such that an agreement can be reasonably implied from the course of business between the partners. Applying this standard of liability for extra compensation, the auditor found that an agreement that P. B. Maynard be compensated for his service was reasonably implied from the following circumstances: The partners were father and son. The capital employed in the business was ten thousand dollars; three thousand of which was contributed by the son, P. B. Maynard. The business was conducted for something over twenty years before W. T. Maynard died; during which time P. B. Maynard contributed his whole time to the management of the business. The senior member had other large enterprises, and gave but little attention to the banking business. The business was not uniformly successful, and at times the senior partner threatened to close it out. To the knowledge of W. T. Maynard his son, P. B. Maynard, depended almost, if not entirely, on what he received from the business for living expenses. On one occasion W. T. Maynard came into the bank and asked for P. B. Maynard. His son, Walter, to whom the inquiry was addressed, replied that P. B. Maynard had quit and gone home, and that he could not expect P. B. Maynard to work for nothing and feed himself. To this reply W. T. Maynard said that P. B. Maynard

was not working for nothing; that he was getting a salary. W. T. Maynard on another occasion said to W. N. Maynard that P. B. Maynard was entitled to a salary. To another son W. T. Maynard stated that P. B. Maynard could not live on the salary he was receiving. W. T. Maynard often called on P. B. Maynard for a statement of the banking business; and these statements showed an overdraft of P. B. Maynard, with no credit for salary. Other children of W. T. Maynard were always paid for services rendered to him. The will of W. T. Maynard was drawn by a son, R. L. Maynard, who testified that "when the will was drafted there was not a word said about the overdraft of P. B. Maynard with the bank, while in all business with the other children a reference was made to the indebtedness of that party to the bank, and he set out the indebtedness every one was owing to the bank, and setting it out as a charge against that one's interest in his estate." While courts do not undertake to equalize partners with reference to the personal services of each rendered by them respectively in conducting the firm's business, yet they will enforce an agreement for such allowance made by the partners with each other, either in the partnership articles or upon a valuable consideration outside of them. *Gray* v. *Hamil,* 82 *Ga.* 375 (10 S. E. 205, 6 L. R. A. 72). This agreement need not be express, if it can be fairly and reasonably implied from the actions of the partners, and from their course of dealing with each other in connection with the business, or from circumstances under which extra services are rendered by partners for which compensation is claimed. *Bishop* v. *Pendley,* 138 *Ga.* 738 (76 S. E. 63) ; Adams *v.* Warren (Ala.), 11 So. 754; Emerson *v.* Durand, 64 Wis. 111 (24 N. W. 129, 54 Am. R. 593). We think that the auditor was authorized to find an implied contract to pay P. B. Maynard for extra services, and that the amount allowed is supported by the evidence.

It is urged that the claim is barred by the statute of limitations. We do not think so. This is not an action to recover on a quantum meruit for these services. The partner received the amounts claimed for extra compensation from year to year. Instead of making an entry on the books in the form of payment for services, the entry is that of an overdraft. Certain heirs of the deceased partner are seeking an accounting against the surviving partner, and are asking him to account for the overdraft. The surviving

partner replies that he received most of this overdraft in payment for extra services. If he was entitled to any or all of this money for services, equity will not take it away from him because of a faulty bookkeeping entry.

3. The auditor found that W. T. Lawson, a son-in-law of W. T. Maynard, was largely indebted to the banking firm of W. T. Maynard & Company. He was not on good terms with the junior partner, P. B. Maynard, and would not deal with him; and a settlement of his indebtedness was negotiated by the senior partner, W. T. Maynard. It was agreed that Lawson would convey certain land known as the Hathorn Place in consideration of a credit of $2500 on his indebtedness to the banking firm. The settlement was carried out by Lawson making a deed to the land to C. J. Zellner, who in turn conveyed the land to W. T. Maynard. The payment of Lawson's indebtedness to the extent of $2500 was the only consideration for the deed. The testator devised this tract of land, in addition to another tract of land known as the Clower Place, to his daughter, Amanda, wife of W. T. Lawson, for life, with remainder to her children. On these facts the auditor reported that "it will be equitable and just that the title to this property be decreed to be in W. T. Maynard & Company, W. T. Maynard having bought the same for the benefit of W. T. Maynard & Company; but if his estate or the Lawson children desire the same, that the title be decreed either in the estate or that it be allowed to pass to the Lawson children under the will, and that a decree be so molded in this event as to require W. T. Maynard's estate to account to the bank for the value of this property, $2500." An exception to this ruling of the auditor is on the ground that one of the alternatives presented therein will permit the executors to repudiate their testator's disposition of the property. The purport of the auditor's conclusion is that the Hathorn place, having been purchased and paid for with funds of Maynard & Company, equitably belonged to Maynard & Company; but that under the facts of the case, on an accounting by the executors or devisees of the purchase-money which belonged to W. T. Maynard & Company, the legal title be confirmed. The case is in equity; and under the many complications, we think the ruling of the auditor does substantial equity between the parties. The law implies a trust whenever the legal title is in one person but the beneficial

interest, either from the payment of the purchase-money or other circumstances, is in another. The finding of the auditor is that under the circumstances the Hathorn Place is impressed with an implied trust in favor of the partnership of W. T. Maynard & Company. The option given the estate of W. T. Maynard or his devisee of confirming the legal title by payment of the purchase-money is not subject to the criticism of the exception.

4. The testator owned a tract of land known as the Davis Mill Place, which was sold by his executors at public sale and knocked off to T. R. Talmadge as being the highest bidder. A deed was made by the executors to E. T. Mallory, the father-in-law of one of the executors, P. B. Maynard, pursuant to this sale. By an amendment to the petition this sale was attacked by the plaintiffs as voidable, because the real purchaser thereat was P. B. Maynard, and the taking of the deed in the name of E. T. Mallory was but a cloak to hide the real transaction. The auditor found, under the facts, that Mallory purchased the land in good faith, but that, even though the title be voidable, he could not set it aside, because Mallory was not a party to the cause. After the report had been filed and exceptions of law and fact thereto had been taken, the exceptors (who are plaintiffs in the original petition) moved to amend the petition by making Mallory a party. Mallory was served with a copy of the rule to show cause why he should not be made a party, and resisted the motion by answer and by demurrer. We have carefully examined the evidence before the auditor, and find it sufficient to sustain his finding of fact that the sale to Mallory was in good faith, and there was no error in overruling the exceptions to this finding of the auditor, or in refusing to make Mallory a party defendant.

5. After a careful examination of the voluminous record in this case, we think that the auditor did not err in overruling the exceptions of fact. Many of the exceptions, classified as exceptions of law, are really exceptions of fact. So far as the legal questions presented thereby are properly made, they are covered in the foregoing discussion and rulings.

*Judgment affirmed. All the Justices concur.*