Murdock et al., Appellants, *v.* Murdock et al., Appellants.

Argued March 24, 1930.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. Earl Ogle, Jr.,* with him *A. Lloyd Adams,* for appellant.—A pledgee of corporate stock is entitled to dividends in the absence of a waiver or agreement to the contrary.

The record does not sustain the conclusion expressed in the opinion of the court.

*I. Morton Meyers,* with him *James A. Graham* and *Russell R. Yost,* of *Graham, Yost & Meyers,* for appellees.—In view of all the evidence, the finding of the chancellor that the dividends were received and disbursed by the partnership, J. M. Murdock & Bro., was manifestly correct.

OPINION BY MR. JUSTICE SADLER, April 21, 1930:

By agreement dated November 1, 1884, supplemented by a writing of November 10, 1894, J. M. and Wilbert F. Murdock formed a partnership known as J. M. Murdock & Bro., "for the purpose of conducting and engaging in the buying, selling and manufacturing of lumber," etc. A brokerage business in the product named was carried on by the firm until October 10, 1918, when Wilbert died, thereby causing a dissolution of the firm. The survivor, recently returned from war service in France, took charge of the liquidation of its affairs on November 1st of the same year. Prior thereto extensive transactions had been successfully conducted, and the partnership had acquired considerable assets, represented by securities as well as interests in certain coal lands and other real estate. Before the termination of their re-

lations, the deceased partner took an active part in managing the business, and had in charge the mining of the property located in Somerset County, when, at intervals, its operation was deemed advantageous. Control of the Millboro Lumber Company had been secured through stock ownership, and the firm, in developing this concern, became responsible for a large sum as endorser or guarantor of its obligations, securing the liability to the discounting bank by bonds and stocks owned by the partnership, deposited for this purpose in a specially reserved safe deposit box. From November 1, 1918, to May 5, 1919, the liquidating partner acted for the firm, when the assets were transferred for $19,453.74 to a corporation created to carry on the same business, and the latter has since that time continued its operations. Between the dates mentioned, the liquidator earned net profits of $10, 927.23, as appears by the restated account, and those representing the deceased partner are entitled to share therein: Froess v. Froess, 284 Pa. 369; Eisenlohr's Est. (No. 1), 258 Pa. 431.

The widow of Wilbert was dissatisfied with the statement of the partnership affairs submitted by the survivor, and, on November 21, 1923, filed a bill in her own right and as executrix, in which the administrator of a deceased child joined, asking for a formal accounting, to which they were entitled: Wheeler's Assigned Est., 287 Pa. 416. An answer denied any such obligation, because the remaining assets of the firm had been pledged with the First National Bank of Johnstown as collateral for liabilities of the Millboro Lumber Company, assumed by the firm, or members thereof by agreement on its behalf, the widow having already been paid, as found by the court, $42,496.12, all that was admitted to be due and presently distributable. A hearing was had on April 2, 1924, and adjourned at the request of plaintiffs so that expert accountants employed by them could examine the firm's books. Upon the completion of this work, further testimony was taken, and, on June 25, 1925, a nisi de-

cree was entered directing the filing of an account, including therein the profits earned to the time of the sale of the business in May, 1919, and this was in due time presented. Exceptions were filed, based in part on the failure to set forth debits and credits after November 1, 1918, which resulted in the filing of an amended statement extending to February 2, 1926, though no formal order required the liquidator to do so. The chancellor found in its decree that a final settlement had not been made more promptly because of the complications in which the partnership had become involved through its relations with the Millboro Lumber Company, and the consequent inability to adjust outstanding indebtedness. It held the defendant should be charged with the value of good-will transferred in May to the new corporation, an asset fixed at $5,000, but this conclusion was later set aside by the court in banc, as will be hereafter noted.

The taking of testimony was resumed on May 7, 1926, and completed two months later. No decree was entered, however, until August 23, 1928, two years thereafter, during which period it is evident, from an examination of the evidence, a most careful and painstaking study of the testimony and the many involved book entries was made by the trial judge. The numerous findings of fact disclose that all the contentions made by both parties were considered. A review of the voluminous record convinces us that the conclusions reached are in the main justified, though exceptions thereto were filed by both sides. From the final order, these four appeals were taken by plaintiffs and defendants. The various propositions advanced before us can best be disposed of in one opinion. The legal questions involved are not difficult of solution, but their application depends largely on the determination of disputed questions of fact, which must be briefly referred to. When there is evidence to sustain the findings, we must, of course, accept the conclusions of the court below. Without referring to the assignments of error separately, which would unduly extend this opinion because of their num-

ber, we will discuss the general propositions in controversy, and state our views as to the correctness of the rulings thereon.

Plaintiffs first complain of the determination that certain securities owned by the partnership were held in pledge to secure the First National Bank of Johnstown for loans to the Millboro Lumber Company, and for which the Murdock firm, a large stockholder therein, or its members, had, by agreement, assumed liability. The principal business of the partnership was buying and selling lumber as brokers, and, to secure a supply, it became interested in the corporation referred to. When its assets were sold in 1926, the liabilities exceeded the amount received by $543,178.80. The total claim of the bank against the lumber company reached, at that time, $644,816.77, with accrued interest of $107,542.52. The partnership, or those interested therein, were contingently liable to it as a result of loans made for more than $250,000 (Finding 59, to which no exception was taken). The court has found that the deceased partner in his lifetime had agreed with the survivor that certain securities should be kept in a box in the bank's vault as security for these obligations, and that this was done. Such stocks had been separated and held for the use of the pledgee, and must be used for the satisfaction of this indebtedness, which is greater than the market value of all so deposited.

It is urged that there was a mere agreement to pledge, and not a consummated transaction, but the court has held there was existing a valid and binding contract, and we think correctly so, though the property set aside was not actually delivered to the pledgee, no rights of third parties having intervened: Davis v. Billings, 254 Pa. 574; Eagle v. Kunkle, 278 Pa. 190; Collins's App., 107 Pa. 590. As was said by the trial judge: "From all the testimony in this case, we have no hesitancy in determining that the particular assets pledged as security for the obligations of the Millboro Lumber Company,

were so pledged and should be so held and disposed of."
Nor is there merit in the contention that the notes for
which the collateral was held are barred by the statute
of limitations, for the securities therefor may still be
resorted to (Hartranft's Est., 153 Pa. 530) ; nor that an
act of congress provided that it should be unlawful for
a national bank to accept its own stock as collateral, in-
validated the pledge, since this legislation is not appli-
cable where accepted to prevent loss on a debt previously
contracted, an exception controlling here. The require-
ment that, in such case, where the stock is actually de-
livered, it shall be disposed of within six months, can-
not alter the legal situation, as the validity of the pledge
has been the subject of litigation since 1923, and actual
possession of it did not exist before. Certain other se-
curities owned by the firm, not appropriated to protect
the Millboro Lumber Company loans, have been duly
accounted for.

The defendant and the First National Bank of Johns-
town, intervenor, object, in their appeal to No. 9, March
Term, 1930, to the determination of the court, that the
dividends accruing on the securities, held for the pro-
tection of the bank in a safety box kept in its vault, were
chargeable against the liquidator as part of the firm's
assets, claiming these amounts should be awarded in
partial satisfaction of the obligations unpaid and over-
due, owing to it. With this conclusion, the court below
did not agree, since it appeared that, at all times, the
pledgor was permitted to collect and use for partner-
ship purposes the dividends collected, including those
declared upon the stock of the bank. The conduct of
the parties clearly showed the pledgor firm was to have
the benefit of such sums actually paid to and received as
accruing income. The conclusion was therefore prop-
erly reached that such dividends, already appropriated,
should not be taken from the firm balance and applied
in part payment of the debt for which the stocks were
validly held. It follows that defendants' claim, now

asserted that such amounts, received after the date of the last distribution, and the time of bringing suit, is without merit, and the decree below so holding must be sustained.

The second group of assignments of error is directed to the accounting for receipts from coal lands owned by the firm, located in Somerset County, which property was carried on the books at a valuation of $1,000. This operation was incidental to the principal business of the firm. The mines were worked only occasionally, and were in charge of the deceased partner prior to his death. No books were kept at any time showing the expenses of the workings, nor was any record available by which the net profits derived therefrom could be estimated. This was true for the period when the coal was recovered prior to November 1, 1918, as also while in the hands of the liquidator. The bank book discloses a "coal account" showing a balance, on October 8, 1918, of $1,199.87, and deposits thereafter were credited in the same ledger to the extent of $177,834.39, but nothing indicated the cost of production or the real profit made. The only reference to coal balances in the lumber company's cash book was an entry of the receipt of $27,998.56 paid by the Glazier Coal Company, and $2,544 by the Penn Public Service Corporation.

The credits to the "coal account" in the First National Bank of Johnstown show the deposits mentioned, but no papers were in existence indicating expenditures for mining or selling either before 1918 or thereafter. In the restated account, the defendant charges himself with the items appearing on the partnership books, reaching a total of $30,542.86. Plaintiffs contend that he should be debited with the whole sum credited by the bank under the heading above referred to, since it prima facie disclosed amounts received, and the survivor was in duty bound to show the costs paid therefrom for mining, sales expense, or other proper items of expenditure. It is of course true that the burden is on a fiduciary, in the

ordinary case, to prove any outlays made, where a definite sum is received by him in a trust capacity: Leary v. Kelley, 277 Pa. 217. And if it appears that books and papers have been destroyed by the one presumptively, liable, he will be held responsible for the full amount, unless he furnishes proof establishing set-offs to which he is legally entitled: Runyeon v. Eaches (No. 1), 79 Pa. Superior Ct. 267, and (No. 2), page 272.

In the present case, there were no books or papers kept at any time, nor were any destroyed by the one sought to be charged, the mine having been run only occasionally when the sales price of the product was high, a practice begun by the deceased partner and continued in the same way by the liquidator. The testimony showed the entries of sums obtained from a sale of coal were not customarily carried on the firm's books, and that, when net amounts available were received, they were divided between the parties without entering them therein. A memorandum given Mrs. Murdock, offered in evidence, shows coal profits in 1922 were $43,000, of which she was entitled to one-half. She admitted the receipt in cash of only $40,079.92 as a whole from the defendant, but there is no separate entry to show this did not include her share of the amount first mentioned. The court below refused to charge the defendant with the total deposits referred to in the bank ledger, but did allow her the one-half of the admitted collections as entered in the books, and no more, since the testimony showed all other net sums received from this source were divided from time to time as they came to hand.

In the 32d finding of fact, based on evidence of record, which must be accepted as true, the trial judge found the earnings of the coal business were distributed between the parties as soon as determined, except as to the amount charged in the partnership books, and evidently used in the firm's business, and for which the liquidator was compelled to account. It expressly refused the plaintiff's 23d request to find: "None of the

proceeds derived by the liquidating partner from the operation of the mines were paid to plaintiff or any of them," and, also, the 33d, which asked it to say: "The liquidating partner, J. M. Murdock, has retained the plaintiff's share of the funds of the partnership arising from the operation of the coal property for more than seven years, without any cause or reason or accounting therefor." These conclusions were approved by the court in banc and were justified by the proof offered that separate division of coal profits had been made as received, with the exception of the amounts debited from such source appearing in the firm's books, for which defendant was held liable.

The mere entry of deposits in the bank under the heading "coal account" was not sufficient, under the circumstances proven, to show unaccounted for net profits, nor indeed to make necessary proof of expenditures for mining and other costs deductible from total receipts, in view of the testimony that the profits were, in all cases, distributed between the parties, except where received by the partnership and entered in its books. Though no papers, showing the mining transactions, were in existence, the failure to produce such data was not due to wrongful destruction by the liquidator, but the result of a course of procedure instituted by the deceased partner, in view of the occasional, rather than the regular, mining on the property, a practice followed by the survivor.

The third complaint is based on the failure of the court to charge the accountant with the value of the good-will of the property sold. Underdown v. Underdown, 279 Pa. 482, clearly justifies the conclusion reached. Nor can we see error in allowing compensation to the liquidator from November 1, 1918, to the time of the sale of the property. The amount was based on a 5% commission of the moneys passing through his hands, during which time he earned for the firm $10,-927.50. Though partners, in the absence of special

agreement, receive no compensation, yet "a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs": Act, March 26, 1915, P. L. 18, section 18(f). It will be noted that the allowance here made is less than the sum to which defendant would have been entitled under the original firm contract, which gave J. M. Murdock two-thirds of the profits earned up to $3,600, and one-half of all sums received in excess of the amount mentioned. Nor was error committed in permitting a reasonable attorney's fee for services performed for the benefit of the partnership in the absence of proof of misconduct of the liquidator, in which case neither compensation nor allowance to his counsel would be approved: Kline's Est., 280 Pa. 41. We also conclude that interest was not assessable upon the amount paid to W. F. Murdock, in excess of that drawn by the partner, as such is not chargeable under the terms of the partnership agreement, as found by the chancellor, nor was it allowable on the balance due plaintiff, for the trial court found ample justification for the delay in reaching a final settlement, due to the inability to adjust the liabilities arising from the transactions with the Millboro Lumber Company, and the rule enunciated in Watson v. Kelley, 289 Pa. 44, and Underdown v. Underdown, supra, should be applied.

Another error is averred in not charging the partnership with the costs of the audit prepared by experts employed by plaintiffs to examine the books of the firm, and is without merit. Under unusual circumstances such an allowance may be made, but we cannot say that the chancellor erred in refusing to permit such a charge: Kennedy's Est., 141 Pa. 479; Gordon v. Moore, 134 Pa. 486. The lack of definiteness in the statements submitted to the executrix arose from the manner of keeping the books and not as a result of any wrongdoing, and the same practice had been in force during the lifetime of Wilbert. The complications involved arose from

the failure to preserve memoranda as to coal sales, a practice instituted by the deceased partner, and followed thereafter by the survivor, and the difficulties in adjusting the affairs of the Millboro Lumber Company, an unfortunate investment for which both brothers were responsible.

We find no evidence of any bad faith on the part of the defendant, who was compelled, on his brother's death, to adjust a most difficult situation, requiring much time and labor to work out a solution advantageous to those concerned. The court found, and we agree, that he was not given any aid in attempting to settle the affairs, and did the best possible to protect the interests of the firm in closing up the many unadjusted matters. The estate of the deceased partner has, as a result of defendant's efforts, not only been relieved of large contingent liability, but received a considerable sum in cash and securities, and assured of interests in valuable realty, not the subject of discussion in the present proceeding. The evidence and exhibits presented were carefully examined and considered by the trial judge and the court in banc. The questions involved were before the court since 1923, and a reading of the testimony, findings of fact and conclusions of law convince us that an equitable conclusion has been reached.

The decree in all four cases is affirmed, the costs in each to be paid by the respective appellant.