## Bullitt's Estate.

Argued April 27, 1932.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

414

*Boyd Lee Spahr,* with him *Robert Brigham,* for Edna D. Browne, appellant.—The award of 383 shares to principal in 1919 did not increase the intact value of corpus.

The award of 1919 had no effect at all on the intact value of the original shares because it was made to preserve and not to increase their intact value.

The auditing judge inflated the intact value of the original 1,150 shares from their value of $145 per share at the testator's death to a 1918 value of $218 per share.

Appellant is not estopped to object to the inflation of the intact value of the original 1,150 shares: Nirdlinger's Est., 290 Pa. 457.

*Thomas Raeburn White,* of *White, Schnader, Maris & Clapp,* for James F. Bullitt et al., appellee.—The necessary result of the adjudication of 1919 is that as the 383 shares had to be added to the 1,150 shares then held in the trust in order to maintain the principal intact, all of the 1,533 shares thereafter held by the trustees represented principal and not income: Packer's Est., 291 Pa. 194.

*Palmer Watson,* Guardian ad litem, for Pauline Rebecca La Rue et al., and for any other minors having contingent interest in estate of John C. Bullitt, deceased, born or to be born.

The award of 383 shares to principal is equivalent to a finding of fact that they were needed to maintain the intact value of the stock held by the estate: Nirdlinger's Est., 290 Pa. 457; Kellerman's Est., 242 Pa. 3; Havir's Est., 283 Pa. 292.

*Henry S. Drinker, Jr.,* with him *Leslie M. Swope,* for accountants, appellees.—Presumptively, all stock dividends represent corporate earnings and go to life tenants: Graham's Est., 296 Pa. 436; Chauncey's Est., 303 Pa. 441.

Therefore, by necessary implication, when the orphans' court in 1919 awarded all the 1918 stock dividend declared by Virginia Coal and Iron Company to principal, this was a judicial determination that there were no undistributed corporate earnings up to that time to which the life tenants were entitled.

The findings of fact in such prior adjudication that no income remained undistributed up to that time is now res adjudicata: Kellerman's Est., 242 Pa. 3; Bower's Est., 240 Pa. 388; Havir's Est., 283 Pa. 292.

Moreover, the life tenants' right to the corporate earnings in controversy is barred by the statute of limitations: Stetson's Est., 305 Pa. 62.

OPINION BY MR. JUSTICE KEPHART, May 26, 1932:

John C. Bullitt died in August, 1902. By his will he left his residuary estate to trustees, who were to pay the income to his seven children and their descendants for 21 years after the death of his last surviving grandchild (alive at his death), and on the termination of the trust, the principal was to go to his descendants. Each child had power to appoint his share of the income after his death, and his share of the principal after the termination of the trust.

A special trust was thereafter made for one of his children, John C. Bullitt, Jr. His share of the income was directed to be paid to three special trustees who were not the trustees of the residuary estate. The special trustees were to hold the income upon a drastic spendthrift trust, and to apply it, or so much thereof as they might think proper, for the support of John C. Bullitt, Jr. Discretionary power was given as to the amount they should expend for this purpose. Any accumulations not applied to his maintenance were to be paid to his children, or to any of the beneficiaries who, under the provisions of the testator's will, might become entitled to them.

John C. Bullitt, Jr., died in 1925, and by his will he exercised the power of appointment in favor of his

widow as to the income only, expressly disclaiming any intention to exercise the power of appointment as to principal. He left no children to survive him.

At the death of John C. Bullitt, Sr., in 1902, as part of the residuary estate there were 1,150 shares of stock of the Virginia Coal & Iron Company. These shares were delivered to the trustees. In 1918 a 33⅓% stock dividend was declared, and the trustees received 383 additional shares. There was an adjudication of the account in 1919, and this stock was awarded to the trustees, as we shall later discuss.

In 1928, a second stock dividend of 100% was declared and the trustees received 1,595 shares, representing 1,150 original shares, 383 from the 1918 dividend, and 62 shares purchased for the corpus from trust estate funds. Appellant, John C. Bullitt, Jr.'s widow, the income beneficiary, claimed part of this dividend as representing income. The court below, in its adjudication and final decree found that the stock dividend declared in 1918 having been awarded by the adjudication of 1919 to the trustees, it then became part of the principal, and should thereafter be regarded as such; and any stock dividend thereafter should be based upon such adjudication. Ordinarily that much of the finding should not be questioned. The remainder of the adjudication—that the book value of the stock as it existed in 1918 should be the intact value thereafter, and form the basis for apportioning future stock dividends,—presents the debatable ground. That is, the court below in effect found that from the audit of 1919, a presumption arose that the award of the stock dividend of 1918 to the corpus of the estate was to preserve the intact value of 1902 when testator died; that, as there was nothing of record to show what the intact value was at that time, or, if it was increased since that time, what caused the increase, the award of 1919 was in effect an adjudication of intact value as of that date. Oral testimony at the present hearing shows it to have been $218 a share. The adjudi-

cation of 1919 therefore was res judicata of the question now before the court; and in apportioning the 1928 stock dividend all must go to corpus to support intact value. The court thus found it could not go behind the award of 1919 even though a mistake had been made: Stetson's Est., 305 Pa. 62.

The force of appellee's contention lies in its applicability to the adjudication of 1919 and the basic facts on which it was grounded. "Only such facts and issues ......as have been acted on, in the sense that they may be said to be 'judicially ascertained' or determined, can be held res judicata in a subsequent litigation between the same parties, over the same subject-matter:" State Hospital v. Cons. Water Supply Co., 267 Pa. 29; Pasquinelli v. S. Macaroni Mfg. Co., 272 Pa. 468.

Appellant shows in the present appeal, and the court in banc so finds, that the intact value in 1902 at testator's death was $145.93 a share or $167,814.79 for 1,150 shares. After the 1918 stock dividend the book value was $218 plus a share or $251,079.50 for 1,150 shares. The court below concedes the 383 shares (stock dividend of 1918) should have been given to the life tenants in 1919, but, because of that decree, awarded the entire 1928 dividend to the remaindermen. The effect of this decision would be to give them all the accumulated income since 1902 or the difference between $145+ a share and $218+ a share on the 1,150 original shares. Such conclusion furnishes a convenient method to strip a life tenant of all income through stock dividends. It is easily seen that appellee's position has no standing on the merits.

It must be conceded the adjudication of 1919 was out of the ordinary course in such estates. In determining whether the adjudication of 1919 is res judicata of the facts herein involved, an examination of that record and all relevant facts essential thereto is necessary.

The trustees in 1918, having received the 383 shares, submitted to the court for determination the proper ap-

portionment of these shares between principal and income or between life tenant and remaindermen. This was done in connection with their account which stated: "The Accountants charge themselves as follows:

"1917
"Jan.    1  To Securities on hand, as per Trustees' Third Account and Adjudication thereon, viz.:

      "1,150  shs. Virginia Coal & Iron Co. @ 100 .......................... $115,000.00

"1918
"July    3  To Virginia Coal & Iron Co., Stock Dividend 383 shares.

"SECURITIES IN BALANCE

      "1,150  shs. Virginia Coal & Iron Co. @ 100 .......................... $115,000.00
      "383  shs. Dividend Virginia Coal & Iron Co."

That part of its petition referring to this stock stated: "Wherefore, your petitioners ask that distribution be awarded......and suggest......(b) The 383 shares of Virginia Coal & Iron Co., received as a stock dividend on July 3, 1918, should be awarded back to the trustees for further accounting."

In the adjudication the only reference to this matter was: "And now, to wit, March 17, 1919, the account is confirmed nisi." The adjudication does not notice nor did it decide the question asked by the trustees in their petition, but the schedule of distribution awards these shares to the principal at no value, as shown by the account above under "Securities in Balance."

With nothing before us but the above record of 1919 the 1,150 shares appear as being valued at $100 a share, and the 383 shares as being worth nothing. If we accept appellee's theory that the adjudication of 1919 unquestionably determines intact value in the apportionment of the stock dividend of 383 shares awarded to it, then, taking the record as it is, on appellee's theory the remaindermen would be badly misused; but this must

be the logic of the situation if res judicata and the presumption is applied. The court confirmed a value of $100 a share in 1919, and if this was the intact value, then the entire stock dividend of 1928 would go to life tenants, as the value of a share after that dividend was $121+. But if, on the other hand, evidence may be supplied in the present case to show the actual intact value in 1918, then all questions relating to that value at that time may properly be submitted. It nowhere appears in the record that $218 or any figure fixed the value except as shown by the account. Such evidence does not disturb a single line of Judge LAMORELLE's adjudication in 1919. He awarded the 383 shares to corpus—and they are not taken therefrom. If the adjudication decided nothing about value, then value as relating to the 1,150 shares may be shown.

We prefer, however, to base our decision in this case on another matter. While the record as such contained no information as to why the stock dividend of 383 shares was awarded to corpus, there was produced at the present audit an agreement under which the 1919 award was made. All interested life tenants executed it; the agreement read: "We the undersigned, being all of the beneficiaries under the will of John C. Bullitt, deceased, presently entitled to the income therefrom, do hereby request that the stock dividend of three hundred eighty-three (383) shares, which the trustees under the will of said John C. Bullitt, deceased, received from the Virginia Coal & Iron Company in July, 1918, be awarded back to the said trustees as a part of the principal of the estate, to be held for future accounting, and we do hereby agree that such award be made." This agreement was conceded at bar to be the foundation for the award of 1919. The life tenants nowhere assert in it that, in giving the shares to the principal it was done to preserve the intact value then or at any time. It may have been a donation, or it may have been to better secure the corpus, or there may have been many other rea-

sons that prompted such action; they simply said the shares should "be awarded back to the said trustees as a part of the principal of the estate, to be held for future accounting." Why should it "be awarded back" if it had not been considered in the first place as belonging to (awarded to) the life tenants as income. They were entitled to it and they gave it back to the trustees to be added to the principal for future accounting. Under no construction of the agreement could an adjudication based thereon be considered such an adjudication as considered the questions necessary to an apportionment of stock dividend between life tenant and remaindermen where such apportionment was to preserve the intact value. An award based on such an agreement would indicate some other reason than that it was to sustain intact value as generally understood.

This is obviously so;—the facts show that, after the 33⅓% stock dividend of 383 shares had been declared, all of the stock, including the 1,150 shares, had a value of $218 a share, while, at the testator's death, the value was $145.93 a share. All over this latter sum belonged to the life tenants as earnings. They were supposed to know this when they gave back the stock. The adjudication based on such an agreement could not prejudice the questions that must be considered in a final determination of the rights of the life tenants with respect to the future stock dividend. The court below, in determining the question of res judicata, should have considered the pleadings and facts before it necessary to support it. Had it done so, it would not have closed the door against appellant in distributing the stock dividend of 1928.

Following Jones v. Integrity Trust, 292 Pa. 149, in the purchase of stock under stock rights, the reasoning being parallel, there should have been added to the intact value of 1902, the book value of the 383 shares donated or awarded to the principal; this forms a new intact value as a basis for future distribution; to it should

be added the cost of the shares purchased since that time, plus any contributed surplus or capital gains. See Waterhouse's Est., 308 Pa. 422.

The 1928 stock dividend of 100% should be distributed as follows:

| | |
|---|---:|
| Intact Value of original 1,150 shares at $145.9259 a share | $167,814.785 |
| Book Value of 383 shares stock dividend of 1918 at $218.332 a share | 83,621.539 |
| Cost of 62 shares purchased | 14,836.26 |
| | $266,272.584 |

Add thereto
Contributed surplus per share $20.31
Capital gains per share ...... 5.7004

$26.0104 a share
or 1,595 shares equal .................... 41,486.588

Total .......................... $307,759.172

for 3,190 shares, being the 1,595 original shares plus stock dividend of 1,595 shares. Each share would have an intact value of $192.92. After the 1928 dividend the book value of each share was $121.09, and for the 3,190 shares, $386,289.54. The difference, $78,530.37, between the intact value and the book value goes to income, which at $121.09 a share would be 648 shares plus $61.75 in cash as income. Appellant's share of this is 92 shares plus $78.01.

Appellees urge, however, that the appellant is not entitled to receive this income, as it represented accumulated earnings during the life of John C. Bullitt, Jr., that had been retained by the trustees; but we need not go into the question as it was foreclosed by the third paragraph of the stipulation of facts which states that the appellant "is entitled to receive one-seventh of all stocks or sums of money distributable among the life tenants."

The decree of the court below is reversed, and the record is remitted that distribution may be made in accordance with this opinion; costs to be paid from the estate.