33 P.(2d) 369

**In re McMILLAN'S ESTATE.**

No. 3845.

Supreme Court of New Mexico.

Feb. 26, 1934.

Rehearing Denied June 21, 1934.

Edward C. Wade, Jr., of El Paso, Tex., for appellant.

Raymond R. Ryan, of Albuquerque, for appellee.

HUDSPETH, Justice.

The issues in this cause were made up by objections of appellant to the amended final report of W. D. Murray, administrator with the will annexed of the estate of George F. McMillan, deceased. The will was proved in the probate court of Grant county, and later the matter was removed, under the provisions of chapter 40, Laws 1919 (1929 Comp. St. § 34-422), to the district court of that county, where the final accounting was had.

George F. McMillan died testate October 10, 1925, seized of an undivided one-third interest in the San Jose mine situate near Central, Grant county. This interest in the mine was appraised in the probate court at $5,000, but before the final hearing in the district court its value had increased to $50,000. The personal property of the testator exceeded his debts by $221.71. After making specific legacies aggregating $2,005, he gave the residue of his estate, in equal shares, to W. D. Murray and James T. Murray, who were the owners of the other two-thirds of the San Jose mine. They also owned and operated a large mercantile establishment at Central, N. M., under the firm name of Murray Brothers. On December 24, 1926, James T. Murray died. Appellant Dora M. Murray is his widow and sole heir. She is also administratrix of her late husband's estate.

On October 31, 1925, W. D. Murray was appointed special administrator of the estate of George F. McMillan, deceased, by the probate court of Grant county, and on July 10, 1926, the account and report of said special administrator was approved and the special administrator and his bondsmen were discharged. The report showed that the special administrator was the sole operator of the San Jose mine, and that he had on hand as the profits of such operations the sum of $11,229.79. The estate's one-third of this sum was more than enough to pay all debts and legacies. On the day of the discharge of the

special administrator, W. D. Murray qualified as administrator with the will annexed, and on August 8, 1927, as such administrator with the will annexed, he filed what he designated as the final report, showing that he had continued to operate said San Jose mine up to July 31, 1927. The report states: "He reports that since the 5th day of October, 1925, he, in association with James T. Murray, now deceased, worked and operated said San Jose Mine up to the death of said James T. Murray."

At the date of the death of James T. Murray, the proceeds of the operations of the mine amounted to about $20,000. On September 10, 1927, the administrator filed a supplemental report, in which he stated that his former reports, including the final report, contained misstatements of fact as to the ownership of the mine; that Dora Murray's interest therein was an undivided one-fourth instead of an undivided one-half as formerly reported. Paragraph 3 of said supplemental report reads as follows: "That the error in the said final report in stating the interest held by the various owners in the said San Jose Lode and the distribution of the moneys received from the ore shipments, was occasioned by a misapprehension of the administrator herein as to the interest which he personally owned in said mining claim, and that the true statement of his interest therein and the division of the returns from the ore shipments were ascertained by him from an abstract of title to the said San Jose Lode which he had recently obtained."

Dora Murray, the appellant, thereafter filed a petition in the matter of the estate of George F. McMillan, deceased, praying that the hearing on the final report of the administrator be postponed until a suit numbered 6943 could be heard, which petition contained the following: "That on July 25, 1928 petitioner as plaintiff instituted suit in the above entitled court against the said W. D. Murray individually and as administrator of the last will and testament of George F. McMillan, deceased, and against other defendants, wherein she alleged that she is entitled to an undivided one-half interest in and to said mine, which said suit was placed upon the docket of said court under file No. 6943, and is now pending. That a copy of plaintiff's complaint is hereto attached marked Exhibit 'A' and made a part hereof. That your petitioner is advised and believes that said report should not be acted upon and the property and moneys in the possession of said administrator disposed of until final disposition can be made of the issues raised in said cause No. 6943."

Judge Hatch made findings of fact and rendered a decree in suit No. 6943 July 3, 1929. The court found that after the death of George F. McMillan the San Jose mine was an asset of the commercial partnership of Murray Brothers, and that the said mine was operated by said partnership up to the date of the death of James T. Murray. Thereafter the appellee filed the amended final report in the cause before us. When, at the hearing upon appellant Dora Murray's objections to its approval, the final decree and findings made by Judge Hatch in cause No. 6943 were tendered in evidence, they were admitted over the following objections of ap-

pellee: "We admit the authenticity of the record as authentic documents. We have no objection on that score but we object to the introduction of the testimony on the ground it is incompetent, irrelevant and immaterial. That all proceedings prior to the final decree are merged in the final decree, and only the final decree is important, and further that the final decree is not relevant or material in as much as all records in the probate court show reports and accounting on quantum of interest in consonance with the final decree, and that this amended final report seeks to account on the basis of and in consonance with the final decree, namely, an interest of one-half in W. D. Murray and one-half in J. T. Murray, the tendered instruments are in support of the admitted facts and this only tends to encumber the record."

Appellant maintains that the trial court erred in refusing to be bound by the finding of fact made by the court in cause No. 6943—which she maintains was litigation between the parties hereto incident to the settlement of this matter—to the effect that the commercial partnership of Murray Brothers operated the San Jose mine up to the date of the death of James T. Murray. The rule is clearly stated in Myers v. International Trust Co., 263 U. S. 64, 44 S. Ct. 86, 87, 68 L. Ed. 165, where Mr. Chief Justice Taft quoted Mr. Justice Field in Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195, as follows:

" 'In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action up-on the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * *

" 'But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.' "

Appellee insists that the certificate of the findings of fact and decree in cause No. 6943 were improperly admitted; that the judgment roll is not before the court, and without the judgment roll it cannot be said as a matter of law that the court erred in refusing to be bound by the facts found in that suit; that the court must start with the pleadings to determine the issues actually tried and de-

cided. Oklahoma v. Texas, 256 U. S. 70, 41 S. Ct. 420, 65 L. Ed. 831, at page 835; Pasquinelli v. Southern Macaroni Mfg. Co., 272 Pa. 468, 480, 116 A. 372; Bullitt's Estate, 308 Pa. 413, 162 A. 288; People v. Public Service Comm., 255 N. Y. 232, 174 N. E. 637; Raney v. Home Ins. Co., 213 Mo. App. 1, 246 S. W. 57; Pile v. Pile, 134 Tenn. 370, 183 S. W. 1004; Brown v. Wellington Mines Co., 24 Colo. App. 256, 133 P. 427; 15 R. C. L. 981.

The exact question has not been decided in this jurisdiction. In Costilla Estates Dev. Co. v. Mascarenas, 33 N. M. 356, 267 'P. 74, we held (Syl.): "Stipulation, referred to in decree relied on as res adjudicata, is not essential part of judgment roll, at least where decree is complete in itself and requires no explanation."

The findings in cause No. 6943 followed generally the allegations of the complaint. It appears on the face of the findings and decree that the course of dealings of Murray Brothers with reference to the San Jose mine was properly in issue and essential to support the decree. In Evans, Coleman & Evans v. Pistorino, 245 Mass. 94, 139 N. E. 848, 852, the court said: "The introduction of the certificate of judgment in the usual form of the court * * * was right. It does not appear but that this showed the issues raised. Rathbone v. Rathbone, 10 Pick. [Mass.] 1. It was competent as binding between the parties to it, both of whom are parties to this action."

The rule as to burden of proof is stated in 34 C. J. 1073 as follows: "In all such cases, therefore, the party setting up the former judgment as an estoppel must assume the burden of proving that the particular point or question as to which he claims the estoppel was in issue and determined in the former suit. Where, however, the record of the former case is such that the same question appears to have been decided therein, the burden of disproving this rests upon the party who denies that such question was decided."

It will be noted that the objection of appellee to the admission in evidence of the certificates of the decree and findings did not go to the point raised here.

The evidence as to the identity of the subject-matter in issue in the two cases was undisputed and the proof admits of only one conclusion. The trial court only passed upon a question of law reviewable here. On the record before us the proof appears sufficient to invoke an estoppel by prior adjudication. The fact was decided against the appellee in the first suit; the decision concludes the issue against him in the matter before us. Corkran, Hill & Co. v. Fruman, 144 Md. 257, 124 A. 878; Spaulding v. Mutual Life Ins. Co. of New York, 96 Vt. 67, 117 A. 376; In re Eastern Boulevard in Borough of The Bronx, 230 App. Div. 52, 243 N. Y. S. 57, 62; Smith v. Cretors, 181 Iowa, 189, 164 N. W. 338; U. S. Nat. Bank v. Shehan, 98 Or. 155, 193 P. 658.

■ The date of the death of James T. Murray marks a dividing line in the period of accounting, whether considered as the report of an administrator or surviving partner continuing partnership business. Jamieson v. Jamieson, 63 Can. Sup. Ct. 188, 65 D. L. R. 68;

Spalding v. Spalding's Adm'r, 248 Ky. 259, 58 S.W.(2d) 356. In some instances it is important to preserve the distinction. See Groves v. Aegerter, 226 Mo. App. 128, 42 S.W. (2d) 974; Cook v. Howe, 280 Mass. 325, 182 N. E. 581, 583; see, also, note 80 A. L. R. at page 24, for cases discussing the accountability of a surviving partner as executor for profits of a continuing partnership. Appellee here is a single individual, combining in one personality both the administrator with the will annexed of the estate of George F. McMillan, deceased, and surviving partner of the commercial partnership of Murray Brothers. In Cook v. Howe, supra, the court said: "The issues involved appear to have been fully tried. It is desirable that circuity of action be avoided. The case is unusual. Manifest justice seems to require that the controversy be settled on the findings made after a fair hearing. The difficulties in the way are highly technical. While orderly processes although savoring sometimes of technicality must be preserved, Clabburn v. Phillips, 245 Mass. 47, 139 N. E. 498, there is in our decisions strong analogy, if not direct authority, to support the conclusion that the present proceeding affords a remedy. All parties in interest are before a court of equity. The issue has been raised upon the record. Any judgment will be res judicata and will protect and bar all parties if attempt be made to raise the issue in other litigation. In these circumstances we think that the accountant ought to account for all moneys due from him and ought not to be allowed to separate his dual capacities from his single personality."

The facts are quite similar in the case at bar. Appellee maintains that the accounting was made in a court of equity with general original jurisdiction (In re Shelley's Estate, 35 N. M. 358, 298 P. 942), and both parties admit that appellee holds a trust fund for distribution; that all parties concerned are before the court; that the other parts of the partnership business were settled July 12, 1927. Partnership law as applied to the facts is argued in the able briefs of counsel for the respective parties. The court found that the contested item of expenditure amounting to more than $7,000 was "expended by W. D. Murray for exploration and development work in said mine, honestly, judiciously and economically, and with a view to the discovery of a new vein or ore body, and reasonably tended to the development of and the extraction of ore from said mining claim," and, further, that "said W. D. Murray so operated said mine honestly, in good faith, economically, and in miner-like fashion, and in such a way as to derive the most income from and enhance the value of said San Jose Mine."

There is substantial evidence to support these findings of fact. It is admitted that there were valuable ore bodies below the bottom of the shaft which only reached the 300-foot level. These bodies on the 400, 500, and 600 foot levels were exposed by the operators of the Ground Hog mine, an adjoining property, following the ore to the line of the San Jose mine on said levels in the Ground Hog. Later the owner of the Ground Hog purchased an undivided one-half interest in the San Jose mine for $75,000, and leased the other one-

half. In the operation of the properties, the shaft sank by Murray was not used in the extraction of the ore in the San Jose mine, this ore being mined and hoisted to the surface through a deeper shaft on the Ground Hog.

Appellant maintains that since W. D. Murray did not extract ore through the shaft sunk by him, that this work should be classified as a speculative venture entered upon by him without testamentary authority, or an order of court, and without the consent of the appellant. It is admitted that the appellee had neither testamentary authority nor an order of court authorizing the operation of the mine, but the third proposition is in dispute. The court concluded: "That Dora M. Murray, the objector herein, individually and as administrator of the estate of J. T. Murray, deceased, is and should be estopped from asserting any claim or exacting any charge against W. D. Murray as administrator of the estate of George Frederick McMillan, deceased, herein, inconsistent with her recognition of and consent to such possession and operation of the mine by W. D. Murray, as hereinabove set forth."

There is substantial evidence to the effect that the appellant was satisfied with the operation of the mine for months after the death of her husband. She cannot now, as to that period, complain. See Dovey v. Schlater, 104 Neb. 108, 175 N. W. 888; Maynard v. Maynard, 147 Ga. 178, 93 S. E. 289, L. R. A. 1918A, 81; Swaine v. Hemphill, 165 Mich. 561, 131 N. W. 68, 40 L. R. A. (N. S.) 201 and note. See and cf. Doran v. First National Bank of Clovis, 22 N. M. 236, 160 P. 770; King v.

Stroup, 22 N. M. 241, 160 P. 367. She did not qualify as administratrix of the estate of James T. Murray, deceased, until July 12, 1927, on which date the other partnership matters were settled between her and the appellee.

Appellant earnestly argues that the basis for appellee's accounting, so far as the mine expenditures are concerned, for the period after the death of James T. Murray, should be as a tenant in common, or as a surviving partner continuing the mining business independent of the other partnership operations—which it seems were continued by consent of all parties concerned up to July 12, 1927—that on either basis of accounting, W. D. Murray would have to bear the entire loss or expense of the development work, since no income was received as a result of the expenditure of the seven thousand odd dollars. There is evidence that they reached ore before the work ceased, but it is admitted that none was extracted through the new shaft sank by Murray.

Appellant cited Dial v. Martin (Tex. Civ. App.) 37 S.W.(2d) 166. Since the argument of this cause, this case has been reversed. Martin v. Dial (Tex. Com. App.) 57 S.W.(2d) 75, 82. The court quoted from Clay v. Freeman, 118 U. S. 97, 6 S. Ct. 964, 30 L. Ed. 104, as follows: " 'The proposition that the partnership property can be taken out of the surviving partner's hands, and distributed among the several partners and their representatives without a settlement and payment of the partnership debts, including any balance due the surviving partner himself, is a proposition

that equity will not for a moment entertain.'" And the Texas court says further: "The testimony of the surviving partner shows that the delay in disposing of the partnership property was due to his desire to obtain a fair and reasonable price for the property. A surviving partner is vested with some discretion as to the manner of closing the business and the time to be taken for this purpose. He may hold the partnership property for a period sufficient to enable him to avoid a sacrifice of the assets and to make an advantageous disposition of the property. Big Four Implement Co. v. Keyser, 99 Kan. 8, 161 P. 592, L. R. A. 1917C, 166."

The New Mexico Legislature in 1915 added by way of amendment to our statute (1929 Comp. St. § 47-401) a provision to the effect that until the personal representative of the deceased partner has filed his inventory of the partnership property in the probate court, "the rights of the surviving partner or partners shall be the same as at common law." As to the right of a surviving partner at common law, see Hargadine v. Gibbons, 45 Mo. App. 460; Easton v. Courtwright, 84 Mo. 27; Mayson's Adm'r v. Beazley's Adm'r, 27 Miss. 106.

It is a well-settled rule that even where a surviving partner had no authority to continue the business after the death of the deceased partner, the whole transaction should either be adopted or repudiated entirely by the estate (Annotation following Forbes v. Becker, 80 A. L. R. 1, at page 89). It has been held that the heirs had the privilege of choosing either the profits or interest on capital under such conditions where the operation of the partnership business by the surviving partner resulted in profits, but the heirs did not have the right to select the profits for one period and interest for another. Heathcote v. Hulme, 1 Jac. & W. 122, 37 Eng. Reprint, 322; Anno. 80 A. L. R. 75; 24 C. J. 55, § 474. It would seem that, applying that rule, the entire partnership business would have to be taken into consideration, since the better rule is that the surviving partner is only responsible where there is a net loss, and it would be manifestly unjust to charge him with the loss suffered in one branch of the business without allowing an offset of the profits made in another branch.

The San Jose mine, as well as the store and other partnership assets, continued in the status of partnership estate until the settlement of partnership affairs July 12th. The expenditures made on the mine by appellee constituted part of the business of the continuing partnership. In many cases heavy losses would result by the closing of partnership operations immediately upon the dissolution of the partnership by death of a partner. The Legislature evidently had this in mind when the 1915 amendment was adopted. We are not impressed with appellant's theory that the sinking of the shaft should be classified as waste of partnership funds. True, it was not utilized by the purchaser of the property, but from the standpoint of the owners, the sinking of the shaft was a necessary expenditure in order to reach and mine the ore, and it would have been utilized for that purpose if the property had not been transferred to the

owner of the adjoining mine who operated it in conjunction with other property. That the property was benefited is evident. The sale and lease of the property on the basis of ten times the value placed upon it by the appraisers of the probate court settles that question.

In view of the findings of the court, and all the circumstances surrounding the expenditure made after the death of James T. Murray, and prior to the settlement of the partnership affairs, we are constrained to hold that appellee should be given credit in his account for the sums spent on this San Jose mine.

The evidence is undisputed, however, that at the time she qualified as administratrix of the estate of James T. Murray, deceased, appellant protested against the further expenditure of her money on the mine. Therefore, the cost of the mining operation from July 12th to July 31st, amounting to $581.67, must be borne by appellee. This would be so whether he was acting as administrator or surviving partner holding funds of the deceased partner's estate after settlement of the partnership affairs. Swaine v. Hemphill, supra; 47 C. J. 1075. The burden is upon a trustee to show that a credit claimed is a proper disbursement. Murdock v. Murdock, 300 Pa. 280, 150 A. 599; Bennett v. Weber, 323 Ill. 283, 154 N. E. 105; Hagedorn v. Arens, 106 N. J. Eq. 377, 150 A. 4, 5.

The only other point raised involves attorneys' fees claimed as a proper charge against the estate by appellee. Such fees are not usually allowed where litigation is necessary to enforce the right of the cestui que trust (Bennett v. Weber, supra), although a partner or trustee is entitled to charge the expenses of reasonable and necessary services of solicitors against the estate. Murdock v. Murdock, supra. Hagedorn v. Arens, supra. Justice will be served by a reduction of the solicitors' fees listed in the account of appellee by $500.

The order of the district court appealed from will be reversed, and the cause remanded, with directions that the items of $581.67 for the cost of the mining operations from July 12th to July 31st and of $500 for additional attorneys' fees be disallowed appellee. It is so ordered.

WATSON, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.