## Snead's Executrix v. Jenkins, et al.

(Decided October 19, 1928.)

## Appeal from Harlan Circuit Court.

1. Executors and Administrators.—In suit by executrix of deceased partner to settle partnership, evidence that attorney, executrix, and devisees under will of deceased partner insisted that partnership business should be closed and settlement made, that remaining partners requested not to be pressed to sell property because of depressed condition of coal business, and that executrix and other devisees resided outside state and desired partnership business closed, showed that executrix and devisees did not orally agree with remaining partners to continue partnership business.

2. Partnership.—In absence of express agreement to the contrary, partnership is dissolved by death of one of partners.

3. Partnership.—On death of one partner, surviving partners were entitled to possession and control of partnership assets for purpose of settling partnership affairs, and could collect partnership assets, pay creditors, and wind up affairs of partnership, and were accountable to estate of deceased partner for portion of surplus assets, if any.

4. Partnership.—After dissolution of partnership by death of one of partners, surviving partner has no right to enter into any contract which shall bind firm or prejudice estate of deceased partner, except such contracts as are necessary in settling affairs of partnership, and estate of deceased partner was not bound by any contracts unless necessary to close partnership affairs.

5. Partnership.—Where surviving partners continued to operate business after death of deceased partner, court, in settling affairs of partnership, should have ascertained status of firm as of date of deceased partner's death, so far as his estate was concerned.

6. Partnership.—Where surviving partners continued to operate business under old firm name after death of one partner, new firm was created, for whose debts estate of deceased partner was not liable.

7. Partnership.—In settling partnership affairs on death of one partner, partnership indebtedness should be ascertained as of time of deceased partner's death, exclusive of indebtedness to deceased partner, and, after deducting amount of such indebtedness and necessary expenses in winding up partnership affairs from proceeds realized from sale of partnership assets, balance, if any, should be applied in payment of notes executed by firm to deceased partner.

LEE & SNYDER for appellant.

J. C. BAKER, J. C. ADKINS and C. T. DOTSON for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

In November, 1920, W. W. Snead, Arthur Jenkins, and Louis Manning formed a partnership under the firm name of Harlan Liberty Coal Company for the purpose of operating a coal mine in Harlan county. Each of the partners agreed to furnish one-third of the capital necessary to engage in the business and to share equally in the profits and losses. The agreement was oral, and no definite time for the continuance of the partnership was fixed. The firm operated the coal mine until the death of W. W. Snead on March 17, 1923. After the formation of the partnership, the firm being in need of funds, borrowed from Snead the sum of $15,000, and executed and delivered to him five notes—one for $4,000, one for $3,500, and three for $2,500 each. None of these notes had been paid at the time of his death.

Snead left a will in which, after making certain specific bequests, he bequeathed and devised all of his property, including his interest in the Harlan Liberty Coal Company, to his wife and to his two sisters, Mrs. A. P. Thomas and Mrs. J. W. Seigfried, and to his brother, Thomas B. Snead. His aunt, Willie W. Snead, was appointed executrix of his estate and qualified as such. His sisters and brother live at Richmond, Va., and shortly after the death of W. W. Snead, his executrix, Willie W. Snead, went to Richmond to reside with Thomas B. Snead. His widow resided in Knox county, Ky.

The surviving partners, Arthur Jenkins and Louis Manning, continued to operate the coal mine in Harlan county under the firm name of Harlan Liberty Coal Company until October 18, 1924, when W. W. Snead's executrix filed suit in the Harlan circuit court, seeking a settlement of the partnership of which her testator had been a member and the appointment of a receiver to take charge of the partnership property. Jenkins and Manning resisted the appointment of a receiver. The court refused to appoint a receiver, but referred the case to the master commissioner to hear proof and to report the amount of assets belonging to the partnership and the amount of its debts and liabilities.

The commissioner reported that the preferred claims against the firm amounted to $6,145.65, the cost of the action and taxes to the sum of $1,819.10, and all other claims to the sum of $31,787.49. This was exclusive of the indebtedness of $15,000 to the estate of W. W. Snead,

represented by notes executed to him by the firm. Assets of the firm were sold for the sum of $24,569.13. Out of this sum the preferred claims, costs, and taxes were paid without objection, leaving in the commissioner's hands the sum of $16,539.35, which he recommended should be applied to the payment of the remaining indebtedness, amounting to $31,787.49.

Exceptions were filed to the commissioner's report which were overruled, and judgment was entered directing the distribution of the funds in the commissioner's hands among the then creditors of the Harlan Liberty Coal Company. From that judgment this appeal is prosecuted.

It is appellant's contention that the partnership was dissolved by the death of W. W. Snead, and that the surviving partners thereafter operated the business in their own behalf, and that Snead's estate is not liable for the debts created after his death, except such debts as were necessary to properly close up the partnership business, and that, after payment of the debts existing at the time of Snead's death and such other debts as were necessarily incurred in closing up the business, the indebtedness of $15,000 to the estate of W. W. Snead should be paid out of any assets remaining.

Appellees alleged in their answer that after the death of W. W. Snead they entered into an agreement with his executrix and devisees whereby the partnership business was to be continued with the estate of W. W. Snead as one of the partners, and that they had continued to conduct the business under that agreement. An effort was made to prove that such an agreement was entered into but both of the appellees admitted they had never had any communication with or made any agreement with the executrix or any of the devisees except Thomas B. Snead, who was also the attorney for the executrix. They claimed that they had an understanding with him that the business should be continued under the name, Harlan Liberty Coal Company, but they were very indefinite as to the time when such an agreement was entered into and as to its exact nature.

Without entering upon a discussion of the right of an attorney representing the executrix of an estate and the legatees and devisees under a will to bind the estate by a partnership agreement, the weight of the evidence is to the effect that no such agreement was made in this case. Thomas B. Snead, as one of the devisees and at-

torney for the executrix, insisted from the time of W. W. Snead's death that the partnership business should be closed up and a settlement made with the estate of the deceased partner. Appellees were asking that they be not pressed to sell the property at once, as it could only be sold at a sacrifice on account of the depressed condition of the coal-mining business. The executrix and all of the devisees, except the widow, were residing in another state, knew nothing of the coal-mining business, and desired the partnership business closed up in order that W. W. Snead's estate might be settled. In the absence of express agreement to the contrary, a partnership is dissolved by the death of one of the partners. Power Grocery Co. v. Hinton, 187 Ky. 171, 218 S. W. 1013; Goode v. Weaver, 214 Ala. 333, 187 So. 861. Upon the death of Snead, the surviving partners were entitled to the possession and control of the partnership assets for the purpose of settling the partnership affairs. They had the right to collect the partnership assets, pay creditors, and wind up the affairs of the partnership, and they were accountable to the estate of the deceased partner for its portion of surplus assets, if any.

After the dissolution of a partnership by the death of one of the partners, the surviving partner has no right to enter into or make any contract which shall be binding on the firm or prejudice the estate of the deceased partner except such contracts as are necessary in settling the affairs of the partnership. The estate of W. W. Snead ceased to be liable for the contracts thereafter made by the surviving partners, except such contracts as were necessary in closing up the partnership affairs.

The lower court entered the judgment appealed from on the theory that the estate of W. W. Snead was bound by all the contracts entered into by appellees after the death of Snead. This was error. While Manning and Jenkins continued to operate the coal mine under the name of Harlan Liberty Coal Company, it was a new firm after the death of Snead, and his estate should not be held liable for any debts created after his death which were not necessary in settling the partnership affairs. The court should have ascertained the status of the firm as of the date of Snead's death and settled the affairs of the partnership as of that date, so far as his estate was concerned. Only a portion of the claims allowed by the master commissioner have been brought to this court, but these disclose that at least a considerable portion of

the debts allowed were created subsequent to Snead's death.

The record does not disclose the condition of the partnership affairs as existing at that time. Upon a return of the case, it will be referred to the commissioner, with directions to ascertain the amount of the partnership indebtedness existing at the time of Snead's death exclusive of any indebtedness to Snead. After deducting the amount of such indebtedness and the necessary expenses in winding up the partnership affairs from the proceeds realized from the sale of the partnership assets, the balance, if any, should be applied in payment of the notes executed by the firm to Snead. In other words, the partnership should be closed up so far as Snead's estate is concerned as of the date of its dissolution by his death. The surviving partners continued the business under the old firm name, but this created a new firm, for whose debts the estate of Snead is not liable.

Judgment reversed for further proceedings consistent herewith.