## Spalding et al. v. Spalding's Administrator.

(Decided Feb. 3, 1933.)

ROBT. C. RIVES for appellants.

WOODWARD, HAMILTON & HOBSON and J. WALTER HARDESTY for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

James L. Spalding died intestate August 20, 1928, and his wife died a few days later. They left seven infant children ranging in age from nine months to fourteen years. Tom B. Spalding, father of James L. Spalding, qualified as administrator of his son's estate, and Jos. J. Rives, the maternal grandfather of the seven infants, qualified as their guardian.

James L. Spalding at the time of his death was engaged in the general insurance business in Lebanon, Ky., and was a member of a firm which did business under the name of Tom B. Spalding & Son. In July,

1929, Tom B. Spalding filed in the Marion county court his settlement as administrator and at the same time a settlement as surviving partner of the firm of Tom B. Spalding & Son. He claimed that he owned a one-fourth interest in the firm and that his son at the time of his death owned the remaining interest. In March, 1930, he filed what purported to be a final settlement of the estate showing a balance in his hands as administrator of $445.60.

No exceptions were filed to the settlements and they were confirmed, but on September 30, 1930, alleging that he had had no opportunity to file exceptions to the settlements filed in the county court, Jos. J. Rives, as guardian, brought this suit in the Marion circuit court against Tom B. Spalding, administrator, to surcharge the two settlements made by him as administrator of his son's estate. It was alleged in the petition that the settlements were erroneous in a number of respects, and the plaintiff asked that certain amounts be added to the receipts and that certain items of disbursements be disallowed.

The defendant filed an answer and cross-petition and with it a restatement of his accounts as administrator and also as surviving partner of Tom B. Spalding & Son which showed a balance in his hands of $153.94. In an amended answer and cross-petition he set up two additional claims that had been filed with him as administrator—one of Mildred Spalding, his daughter, for $675, and his own claim against the estate of $761.26. Mildred Spalding filed an intervening petition and set up a claim against the estate of her brother, James L. Spalding, for $700 with interest thereon from June 1, 1927, subject to a credit of $100 paid January 1, 1928. Other pleadings were filed by the parties and numerous items were put in issue.

On a final submission of the case the chancellor found that the defendant, as surviving partner, should be charged with gross receipts of $6,682.05, and that he should be credited with disbursements amounting to $3,601.70. The net distributable profits were found to be $3,432.10, and it was adjudged that three-fourths of this sum belonged to the estate of James L. Spalding, deceased, and one-fourth to Tom B. Spalding, surviving partner. In considering the claims of the respective parties as to various items of receipts and disburse-

ments by the defendant as administrator, the chancellor allowed some and disallowed others, the net result being that the total sums admitted by the administrator and adjudged by the lower court that he should account for in excess of that shown in his county court settlement amounted to $1,043.41; and claims against the estate which had not been filed with the administrator prior to the institution of the suit to surcharge the settlements, amounting to $1,124.08, were allowed. The assets in the hands of the administrator being insufficient to pay the claims allowed, it was adjudged that the guardian should pay to the administrator the sum theretofore paid to him, to wit, $383.40.

The guardian has appealed and is insisting that the judgment should be reversed because the chancellor erred in allowing or disallowing certain items in surcharging the settlements of the administrator. The first item of which complaint is made is rental of office furniture and equipment amounting to $90 with which the chancellor refused to charge the defendant. The attorney for the appellants in his brief states that the record discloses the office furniture owned by the partnership was used by appellee for a period of 30 months after the death of James L. Spalding and that during the taking of Miss Cordelia Spalding's deposition it was stipulated by agreement that $3 per month should be allowed as rental for the office equipment. He quotes the stipulation as follows: "It is stipulated and agreed by the attorneys for plaintiffs and defendants that for the office equipment ($3.00) Three dollars per month should be allowed as rental." In the carbon copy of the transcript of the record used by counsel for appellee the words "per month" did not appear in the stipulation. In the record filed in this court it appears that these words were omitted when the stipulation was typed and were later inserted. The office equipment, for which it is now claimed the appellee should be charged with $90 rental, consisted of a typewriter, one desk, one table, one filing cabinet, six chairs, one book rack, and one hat rack. The typewriter had been used by the firm for several years and had a trade-in value of $10 when appellee purchased a new typewriter. Its cash value undoubtedly was much less. The remainder of the office equipment was sold at a public sale for $26. The insertion of the words "per month" was clearly an error, as their presence renders

the stipulation absurd when the value of the property is considered. In any event, the court properly disallowed this claim against the appellee since, as surviving partner, he was entitled to the use of the partnership property pending the settlement of the partnership affairs. The stipulation was only as to the rental value of the property in the event it was held the appellee was chargeable for its use.

The chancellor allowed Tom B. Spalding a credit for $275 paid to his daughter, Cordelia Spalding, for assisting him in settling the partnership affairs, and found that he was a partner to the extent of one-fourth interest in the firm of Tom B. Spalding & Son and allowed him one-fourh of the accrued profits, or $805.38, and refused to charge him with the sum of $1,150, alleged profits of the business accruing after the death of James L. Spalding and before the settlement of the partnership. The ruling on each of these items was correct. The allowance of $275 to Cordelia Spalding is challenged on the theory that she, and not her father, was a partner and that a partner is not entitled to compensation for winding up a partnership. It is conceded that Tom B. Spalding was a member of the firm until some time in 1927, when it is claimed that he retired and that his daughter assumed his place as one of the partners. She had been working for the firm at a salary of $50 per month for approximately eight years, and in 1927 it was agreed that in lieu of the $50 per month she should receive one-fourth of the net profits of the firm and her father was to be paid $20 per month. It was not understood, however, that she was to assume any of the obligations of the firm or to share in its losses. She had no interest in the business other than to receive a stipulated percentage of the net profits as compensation for her services. The profits were merely a measure of compensation. It has been decided by this court in numerous decisions that a share of the profits does not of itself establish a partnership. Blackerby v. Oder, 201 Ky. 403, 257 S. W. 43; Graham v. Swann, 148 Ky. 608, 147 S. W. 11; Heran v. Hall, 1 B. Mon. 159, 35 Am. Dec. 178. The evidence shows that Miss Cordelia Spalding rendered valuable assistance in collecting accounts and performing other duties incident to winding up the partnership affairs.

As to the $1,150 item, the partnership between Tom B. Spalding and his son, James L. Spalding, was

dissolved by the death of the latter and should have been and was settled as of the date of his death. Tom B. Spalding and his daughter, Cordelia Spalding, did continue the insurance business under the old firm name of Tom B. Spalding & Son; but this was a new firm with which the old firm had no concern. The firm was engaged solely in the business of soliciting and writing insurance, and Tom B. Spalding, the surviving partner, accounted in his settlement for all commissions on insurance premiums collected on business written before James L. Spalding's death. After the death of James L. Spalding, appellee, as surviving partner, was only entitled to the possession and control of the partnership assets for the purpose of settling the partnership affairs. Snead's Executrix v. Jenkins, 225 Ky. 832, 10 S. W. (2d) 282, 283. All insurance contracts written subsequent to the death of James L. Spalding were written by the new firm, and appellee is not chargeable with the commissions received on this business in the settlement of the old partnership.

The insurance agency of Tom B. Spalding & Son represented both insurance companies that insured property in the country and companies that wrote insurance on property in cities. The former is referred to in the record as "farm business" and the latter as "recording business." The recording business of the firm was limited principally to the city of Lebanon. The farm business was sold, the purchasers to pay 60 per cent. of the premiums on all business then on the books, which was renewed, and all receipts from the sale of this portion of the business was credited to the partnership in the settlement of its affairs. The recording business was not offered for sale, but appellee and his daughter continued that business under the style of the old firm. Cordelia Spalding did, however, pay $400 for her deceased brother's three-fourths interest in the firm, and appellee accounted for this sum in his settlement as administrator. It is contended that this business was reasonably worth $1,230.63, and that the court erred in refusing to charge appellee with at least three-fourths of that amount, or $922.97, subject to a credit of $400.

It is appellant's theory that the expiration lists in the city of Lebanon had a salable value, and he proved by two or three witnesses who were experienced in the

insurance business that the value of an insurance agency, when it is sold, is the average amount of commissions earned during one year; but all of them admitted that such an agency has no salable value if the old firm continues in the insurance business. What is salable is the good will of the agency. When a member of a partnership conducting an insurance agency dies, the surviving partner is not required to retire from the insurance business in order that the good will of the firm may be sold. Ordinarily good will is partnership property, but whether or not partnership good will exists in any particular case depends upon the particular facts and circumstances involved, and one test for determining its existence is whether a reasonable person would pay anything for it. In re Brown's Will, 242 N. Y. 1, 150 N. E. 581, 44 A. L. R. 510; 47 C. J. p. 770. Appellant's own witnesses stated that the insurance agency of Tom B. Spalding & Son had no salable value if the surviving member continued in the insurance business. Notwithstanding this, Miss Cordelia Spalding paid to the administrator of James L. Spalding the sum of $400.

The partnership, as we have seen, was terminated by the death of one of the partners. At the termination of the partnership the companies represented by it had the right to select another agent. Had the companies selected another agent than appellee, there would have been no good will of the old firm for which he would have been accountable. The mere fact that a new firm of which he was a member thereafter represented the same companies does not alter the case. In Whitney v. Whitney, 115 Ky. 552, 74 S. W. 194, 24 Ky. Law Rep. 2465, relied upon by appellants, it was held that the list of names of the firm's customers with the dates of expiration of their respective policies could not be segregated and sold as an asset. This certainly is true if the surviving partner continues in the insurance business as he had the right to do.

On December 20, 1919, James L. Spalding and Tom B. Spalding balanced their accounts and at that time made an entry on the firm's books which showed that Tom B. Spalding was indebted to James L. Spalding in the sum of $365.04, and that this balance had been settled by crediting it with $100 owed to Tom B. Spalding by James L. Spalding on a transaction not con-

.nected with the insurance business and by a note for the balance due in six months. No note for the balance of $265.04 was executed, and it is apparent that this balance was carried forward as a part of the partner-ship accounts. The books also showed that after De-cember 20, 1919, and before his death, James L. Spald-ing overdrew his account with the partnership $626.72. The circuit court deducted the $265.04 overdraft of 'Tom B. Spalding from the $626.72, which left a balance of $361.68 due from the estate of James L. Spalding.

The appellant complains because the circuit court failed to allow interest on the item of $265.04 and be-cause any overdraft was allowed against the estate of .James L. Spalding. The evidence failed to show that it was expressly agreed that interest would be charged on Tom B. Spalding's overdraft subsequent to De-cember 20, 1919, and in the absence of such an agree-:ment it is the rule that interest is not payable by the partner on overdrafts. Ashbrook v. Ashbrook, 28 S. W. 660, 16 Ky. Law Rep. 593; Jesse v. Slaughter, 205 Ky. 271, 265 S. W. 783. The overdraft of James L. :Spalding of $626.72 was not set up as a liability in the settlement filed by appellee in the Marion county court; but this did not preclude him, as claimed by appellant, from setting it up in the suit to surcharge his settle-ments. The records of the partnership show that it is a proper charge.

After the death of James L. Spalding, appellee attempted to rent a house owned by the decedent's estate which was vacant, but he was unable to rent it because it was in bad repair. He spent $219.69 in mak-ing necessary repairs and then rented it and collected $192.95 in rents which was paid to appellant as guar-dian. The circuit court credited the administrator with the amount of repairs $219.69, and the appellant complains of this on the ground that the administrator was without authority to incur expense for the improve-ment and repair of real estate. Ordinarily an admin-istrator has no authority to incur any expense in im-proving the real estate of his intestate, but the facts of this case bring it squarely within the rule of Taylor v. Roulstone, 60 S. W. 867, 869, 61 S. W. 354, 22 Ky. Law Rep. 1515, where the court said:

"But we cannot concur in the chancellor's conclu-sion that L. J. Bradford owed the estate of A. J.

Bradford $808.82. In reaching this conclusion the chancellor refused to credit L. J. Bradford with $781.38 which he had spent after his son's death for lumber and other repairs on the farm. It is true, he had no power as administrator to do these things. But he was charged with all the rents he had collected from the farm, and should have been credited out of the rents with these expenditures which were evidently made in good faith and for the purpose of protecting the interest of his grandchildren as well as himself.''

The remaining claims allowed by the circuit court against the estate of James L. Spalding of which complaint is made are the item of $700 loaned by Mildred M. Spalding to her brother subject to a credit of $100 and the item of $524.08 paid for James L. Spalding by Tom B. Spalding. Both claims are satisfactorily established by the evidence, but it is insisted that Tom B. Spalding's claim of $524.08 is barred by limitations. It was paid in 1923 by Tom B. Spalding to a third person to satisfy a debt of James L. Spalding, and while it grew out of a transaction not connected with the insurance business, yet it was understood that James L. Spalding would pay it out of his part of the profits of the insurance agency. It was thus treated as a part of the partnership accounts and limitations did not run against it. There is some evidence that Mildred M. Spalding destroyed the note for $700 executed by her brother, but it appears that this was done at his suggestion because he desired the loan to be carried as an open account.

A careful examination of the record convinces us that the circuit court made an equitable adjustment of the claims before it. The record conclusively shows that Tom B. Spalding made no effort to take an unfair advantage of his grandchildren; but, on the contrary, he and his sons and daughters have sought to protect their interests in every respect. Five of the seven orphaned children are now being supported in whole, or in part, by the appellee and his children.

The judgment is affirmed.