## Caudill et al. v. Trimble's Adm'r et al.

(Decided May 31, 1938.)

796

HILL & HOBSON for appellants.

FRED HOWES for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

J. M. Trimble was a successful man. His wife had borne him 16 children, and he had accumulated 800 acres of land and much personal property. When he died in November, 1925, his widow, 11 children and the descendants of two others survived. His son, W. E. Trimble, qualified as administrator of his estate. In due course litigation began and an attack upon a judgment partitioning the land reached this court. Davis v. Caudill, 263 Ky. 214, 92 S. W. (2d) 62. The father and the son, who had at his request been named as his administrator, concluded that his net estate would provide at least $1,000.00 in money for each of the 13 heirs besides the land. The administrator accordingly soon began making distribution of different unequal sums from time to time. The depression coming on with its disastrous results on the value of the notes and securities, the estimate proved too high, and the inability to liquidate some of the assets prevented further distribution and an equalization of the heirs. Perhaps it was this development which caused dissatisfaction and dissension among some of the heirs and gave rise to the questioning of the accounts of the administrator and his delay in making settlement. At any rate, in July, 1930, some of the heirs filed this suit for a settlement of the estate. The court confirmed the report of the master commissioner settling the administrator's accounts. One of the daughters and some of the grandchildren prosecute appeals against the administrator in his fiducial capacity, and individually, and three of the other children and the widow from the judgment as first entered, and against the administrator and four of the other children and the widow from the supplemental judgment. So it appears about one-half of the heirs are not before the court. The record grew to large proportions. The many exhibits were lost before the record for appeal was prepared and consequently are

not before us. We shall, of course, notice only the items of the judgments complained of by the appellants.

The court adjudged that by agreement of all parties what is called the ''Hager Hill Farm'' and its equipment were given to the widow who is past 80 years of age, for her occupancy and use, the maintenance thereof and the taxes thereon to be paid for by the estate; also that she should have the income from 10 shares of bank stock. In consideration of this life estate, the widow relinquished all dower in the other lands and gave up her statutory rights in the personal property. It is contended by the appellants that some of the heirs never agreed to this arrangement, and that in any event the agreement is void and ineffectual because not in writing. The challenge of the agreement rests upon the questioning of allowances of credits to the administrator for payments made by him for the maintenance of the property and the taxes, it being submitted that the administrator was not legally concerned with the real estate of his decedent, and because he was not charged with $900.00 dividends from the bank stock paid to the widow. The commissioner and the court having found as a fact that there was such an agreement and there being very substantial evidence to justify such conclusions, we will not disturb it. Williams v. Denny, 238 Ky. 662, 38 S. W. (2d) 668. Upon the claim that the agreement is within the statute of frauds, it is sufficient to say that the parties acquiesced and permitted the partition of all the lands in conformity with it. Each accepted a deed to his part. The widow received no part or interest in the other 650 acres, and the Hager Hill farm was omitted from the partition proceedings. We imagine that appellants would have been surprised had the court sustained their contentions and, consistently following his ruling, have torn up all that had been done and given the widow her entire distributable share of the estate. In so far as these claims allowed the administrator are concerned, there can be no doubt that the appellants are estopped from questioning them. Jones v. Kentucky Glycerine Company, 226 Ky. 676, 11 S. W. (2d) 713.

The Hager Hill farm seems to have been the original homestead. It had been acquired by a son, Elzie Trimble, from a party other than a member of the family. In its acquisition the father had signed Elzie's note for $8,000.00 given to a bank. It was also secured

by a lien on that property. Subsequently, this farm was traded to the father for one which he owned in Ohio. As surety on the note the father was also secured by the retention or acceptance of a lien on the Ohio land when he traded it. However, he released that lien in order that Elzie might sell the land. The result was that the father became an unsecured surety on the son's note. Elzie reduced the principal and kept up the interest until July 1, 1929. Eventually, however, the administrator was compelled to pay $3,249.30 in satisfaction of the note and interest. By way of reimbursement, Elzie conveyed to the administrator certain property in Russell, and his 1/13 remainder interest in the Hager Hill farm. The appellants claim that the administrator should be personally charged with the amount lost on account of this suretyship for having negligently failed to protect the estate. The administrator had paid Elzie $291.00 in satisfaction of his father's note held by him, and had permitted him to acquire and dispose of his portion of the real estate without undertaking to have it subjected to the payment of the note. The uncontradicted evidence is that when this was done Elzie owned considerable property in Boyd county; was borrowing money from different banks without collateral; and was regarded as in good financial circumstances. The administrator was not called upon by the bank for the interest or any part of the principal until July 1, 1929. This was sometime after the transaction stated had taken place. We think the judgment denying liability of the administrator on this account is sustained by the evidence.

We may here dispose of the contention that credits were erroneously allowed the administrator for court costs and other expenses incurred in looking after and attempting to clear the title and sell the property in the city of Russell which had been conveyed by Elzie; also certain expenditures in connection with what is known as the Ratcliffe land which had been purchased by the administrator at a foreclosure sale made necessary in order to collect notes held by the estate and secured by a lien on that property. The purchase was to protect the estate from loss. These contentions are based upon the conception that an administrator has nothing to do with the real estate of a decedent. Ordinarily that is correct, but we do not think that such law is applicable where the real estate has been acquired by an adminis-

trator in the exercise of good faith and proper diligence in collecting the personal assets in his hands. These activities and expenditures were obligations of the administrator as such and not of the heirs of the lands. They had not inherited it. The administrator had the right to purchase. the land and when he did, it became a part of the. estate and could be treated as personalty until his duty as administrator was performed. Taylor v. Roulstone, 60 S. W. 867, 22 Ky. Law Rep. 1515, rehearing denied 61 S. W. 354, 22 Ky. Law Rep. 1515; Jackson v. Roberts, 95 Ky. 410, 25 S. W. 879, 15 Ky. Law Rep. 831. Therefore, he was entitled to these credits.

The allowance of a credit for $332.25, paid as costs in the suit for partitioning the land is questioned. A technical observance of the law, which recognizes that an administrator of the personal estate has no authority to incur any expense in connection with the real estate of his intestate would sustain appellant's contention. But to do so would be but to create circuity and additional expenses to the parties. Each heir was, of course, chargeable with his proportionate part of these costs. No question seems to have arisen about them when the parties accepted their respective deeds. Under the circumstances we think the chancellor properly allowed the credit. Cf. Spalding v. Spalding's Adm'r, 248 Ky. 259, 58 S. W. (2d) 356.

The decedent had been one of several sureties on a sheriff's bond. When they became liable they borrowed $15,000.00 and executed their joint note to the Paintsville National Bank. This seems to have been reduced by the sheriff, but in the end Trimble's administrator had to pay $1,059.56 on account of the note. The allowance of credit for this item is questioned because it is said there was no verification of the claim such as is required by Section 3870 of the Statutes. The evidence as to this is not clear. Perhaps the statement of accounts or settlement which the administrator seems to have filed with the master commissioner, and his checks accompanying same, would throw some light upon the matter, but they are not here. The administrator testified that no one filed any proof of claim against the estate except the bank because his father owed no one else. In the absence of the exhibits, we must presume that the bank's verified claim included

this obligation and that the credit was properly allowed.

Included in the payments made to fix up and maintain the family cemetery, there was an item of $144.00 covering the purchase of monuments for the graves of Lindsay Trimble and his wife. This was charged against his children as a distribution. W. E. Trimble, the administrator was also the guardian of these children and expended this amount and certain other sums out of the estate for taxes on their real estate and for their clothing and books and charged the same up to them as a distribution. He did this because he had no funds as guardian. It is argued that the administrator not only was without authority to do this, but in fact received double credit. In the absence of his settlement and other exhibits and there being nothing to the contrary in the commissioner's report, and no part of the evidence being pointed out as disclosing this, we cannot presume that such is the case.

Credit was taken by the administrator for $269.95 paid attorneys for collecting certain notes. It is claimed in brief that $100.00 would have been a reasonable fee. The evidence as to what these services were shows the sums paid to have been reasonable and there is not a scintilla of proof showing that they were not.

There are several other items questioned. Among them is a credit for $5.55 covering the cost of telegrams and telephone messages to the children and other relatives announcing the death of their father and kinsman; also a store bill for $4.94, for neither of which was any verified claim. The rule of deminimis non curat lex must surely be applied.

Appellants vigorously submit that the administrator should be held chargeable with at least $30,000.00 because of concealment of assets. Boone Trimble, his brother, testified that either Wince (the administrator) or Elzie had told him that his father had $21,000.00 in notes but the inventory contained only $14,000.00. The husband of one of the grandchildren deposed that the decedent sometime before his death, when he was signing his note for $1500.00 as surety, did not hesitate because, as he observed, his wife's share in the estate would be more than enough to care for the obligation. Mrs. Caudill, a daughter, related that Wince told her in

January, 1931, that the difference between $14,000.00 and $100,000.00, which their father was rated to be worth, had been lost "here and there" and that Elzie had lost the family a lot of money. This was denied by Wince who, however, expressed the opinion that their father was perhaps worth $100,000.00, considering his lands, when he died in 1925. The depression which occurred in the meantime must not be overlooked. The only other additional evidence tending to support this concealment of assets is that a short time before his death, Quince Trimble (not the administrator) told Mrs. McKenzie, one of the grandchildren, that he and his father and mother had counted the father's notes a short time before he died and they amounted to $30,000. One of the grandchildren testified that the day after the old gentleman died her grandmother and two uncles went to a room upstairs and closed the door and stayed there the biggest portion of the day, and while they were there she heard a typewriter being operated in that room. The insufficiency of this evidence to show fraud and to authorize charging the administrator with malfeasance is manifest.

It was finally adjudged that the administrator was entitled to recover of the estate $3,725.25 as the amount he had disbursed and was entitled to receive by way of commissions in excess of the amount he had received in liquidating the estate. In order to satisfy this; to pay $2100.00 due the bank, secured by a lien on the Hager Hill property; to pay the costs of the suit, including a balance to the attorneys for the administrator; and to equalize the distribution to the heirs, the court ordered the master commissioner to sell real estate which had not been partitioned. This included the Ratliffe farm and the property in Russell which had been conveyed to the administrator by Elzie Trimble, as above set forth. The Hager Hill property was to be sold subject to the right of the widow to use and occupy it during her lifetime. The only question made as to this portion of the judgment is that the court should have ordered the Hager Hill property sold without being subject to the right of the widow to use and occupy the same, and let her rights attach to the proceeds. We concur in the appellee's argument not only that this was unnecessary, but as well that it would have been manifestly unfair to require this aged mother, who has dealt so generously with her children and grandchil-

dren, to vacate her home and accept only the small present worth of that life estate.

There is no merit in the claim that the administrator is not entitled to his commissions. The impression that we gather is that he has been faithful and diligent in the discharge of his trust.

The appellants had been represented by different attorneys during the pendency of this suit. Sometime after the original judgment was rendered, their then attorneys asked an allowance of a fee for representing them as plaintiffs. A jury fixed $250.00 as a reasonable sum and judgment was rendered against the estate accordingly. The appellees have been granted a cross appeal and maintain that this part of the judgment should be reversed. The attorneys are not appellants and, therefore, could not be cross-appellees. Appellees also prayed an appeal in this court against "Hill & Hobson." Aside from the absence of any individual being named, the firm of "Hill & Hobson" has not been served with process or in any other way brought before the court. When an allowance has been made to attorneys in a case they must be parties to the appeal, else it cannot be reviewed. Flowers v. Flowers' Adm'r, 249 Ky. 203, 60 S. W. (2d) 596; Stepp's Adm'r v. Pauley, 261 Ky. 421, 87 S. W. (2d) 952.

The judgment is affirmed.